STATE OF WEST VIRGINIA

*v.*

ELDRED GENE GOFF

(No. 14151)

Decided December 2, 1980.

*David M. Finnerin* for plaintiff in error.

*Chauncey H. Browning*, Attorney General, *Gregory W. Bailey and Homer A. Speaker*, Assistant Attorneys General, for defendant in error.

MILLER, JUSTICE:

In this appeal from a conviction of breaking and entering, the defendant Eldred G. Goff assigns several grounds of error. The first relates to the seizure of the title to a 1969 Ford automobile which was found in the glove compartment of his pick-up truck. The second and third errors

relate to the State's instructions on intent and burden of proof.

Late in the evening of December 22, 1976, a police officer noticed a 1969 Ford automobile being driven across a used car lot in Parkersburg, West Virginia. Since the lot was closed and the car was being driven without lights, the officer stopped the car. When the driver of the car gave false responses to the officer's questions, he was arrested. His name was William Vandal.

The officer then observed broken glass in front of the car lot office and a pick-up truck parked on the lot in which the defendant Goff was seated. By this time a second police officer arrived at the scene and both proceeded to investigate the broken glass and Goff's presence in the pick-up truck. They arrested Goff and transported him along with Vandal to jail.

An hour or so later, the police in conducting a further investigation of the breaking and entering searched the defendant's truck without a warrant, while it was still parked on the used car lot. In the course of what they termed an inventory search, they opened the glove compartment and found a title to a 1969 Ford automobile. This title was introduced into evidence over the defendant's objection.

I.

We have not had occasion to consider the parameters of an inventory search of a vehicle. The United States Supreme Court in *South Dakota v. Opperman*, 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976), recognized that under certain circumstances an inventory search could be made of a vehicle without a warrant.[1] The predicate for such a

[1] The court in *Opperman* put to rest the question of whether a police administrative inventory was in fact a search falling within the Fourth Amendment prohibition against unreasonable searches finding that routine police inventory searches were not unreasonable. *Compare People v. Sullivan*, 29 N.Y.2d 69, 272 N.E.2d 464, 323 N.Y.S.2d 945 (1971) *with Mozzetti v. Superior Court*, 4 Cal.3d 699, 484 P.2d 84, 94 Cal. Rptr. 412 (1971).

search does not arise because the police suspect the vehicle contains contraband or evidence of a crime.[2] Rather, it is based on several practical considerations which *Opperman* identified: (1) the protection of the owner's property while it remains in police custody; (2) the protection of the police against claims or disputes over lost or stolen property; and (3) the protection of the police from potential danger. (428 U.S. at 369, 96 S.Ct. at 3097, 49 L.Ed.2d at 1005.)

We do not view *Opperman* as extending a blanket authorization to make an inventory search of a vehicle anytime its owner has been arrested and separated from his vehicle. *Opperman's* facts which were stressed by the Court in its concluding language show that (1) there was an initial lawful impoundment of the vehicle; (2) the driver was not present at the time of the impoundment to make other arrangements for the safekeeping of his belongings; (3) the inventory itself was prompted by a number of valuables in plain view inside the car; and (4) there was no suggestion that the inventory search was a pretext for conducting an investigative search.[3]

While it may be argued that these conditions are not an integral part of the *Opperman* holding, we consider them to be. Even if they are not required by the Fourth Amendment, they comport with our view of the prerequisites of an inventory search under Article III, Section 6 of the West Virginia Constitution. In a number of jurisdic-

---

[2] Thus, an inventory search differs from the "automobile exception" or *Carroll* doctrine, where probable cause exists to believe the vehicle is carrying contraband or evidence of the commission of a crime. *See State v. Moore,* 165 W. Va. 837, 272 S.E.2d 804 (1980).

[3] In *Opperman* the court specifically stated:

"The inventory was conducted only after the car had been impounded for multiple parking violations. The owner, having left his car illegally parked for an extended period, and thus subject to impoundment, was not present to make other arrangements for the safekeeping of his belongings. The inventory itself was prompted by the presence in plain view of a number of valuables inside the car. As in Cady, there is no suggestion whatever that this standard procedure, essentially like that followed throughout the country, was a pretext concealing an investigatory police motive." (428 U.S. at 375-76, 49 L.Ed.2d at 1009, 96 S.Ct. at 3100.)

tions since *Opperman*, courts have had difficulty[4] in determining whether the foregoing conditions are predicates for a valid inventory search and have either concluded that they are or resolved the issue by setting standards under their own constitutional provisions as permitted by *Oregon v. Haas*, 420 U.S. 714, 95 S.Ct. 1215, 43 L.Ed.2d 570 (1975). *See e.g. Altman v. State*, 335 So.2d 626 (Fla. App. 1976); *Wagner v. Commonwealth*, 581 S.W.2d 352 (Ky. 1979); *State v. Rome*, 354 So.2d 504 (La. 1978); *State v. Goodrich*, 256 N.W.2d 506 (Minn. 1977); *State v. Sawyer*, 174 Mont. 512, 571 P.2d 1131 (1977); *State v. Slockbower*, 79 N.J. 1, 397 A.2d 1050 (1979); *Drinkard v. State*, 584 S.W.2d 650 (Tenn. 1979).

In the present case, the record is unclear as to whether the State attempted to show any lawful impoundment of the truck. After the driver was arrested and removed to the police station, his truck was left parked on the used car lot. It appears that the inventory search was made an hour or two later while the truck was still parked on the used car lot.[5] There is no evidence in the record as to whether the

---

[4] Commentators are not in agreement either as to the validity of the theoretical underpinnings of the inventory search or the permissible scope of an inventory search. Moylan, *The Inventory Search of an Automobile: A Willing Suspension of Disbelief*, 5 U. of Bal. L. Rev. 203 (1976); Anderson & Clark, *Inventory Searches: A Reappraisal*, 30 JAG J 181 (1978); Note, *The Inventory Search: The Supreme Court Spins A More Intricate Web*, 22 So. Dakota L. Rev. 142 (1977); Note, *Inventory Searches of Motor Vehicles: The Effect of South Dakota v. Opperman*, 6 Capital U. L. Rev. 315 (1976).

[5] The pertinent portion of the record regarding the inventory search was:

"Q Prior to the time you searched the motor vehicle, what if anything had happened to the defendant, Mr. Goff?

"A He was transported to the Wood County Correctional Center.

* * * * * * * *

"Q What was the purpose in searching the truck driven by Mr. Goff?

* * * * * * * *

"A I conducted an inventory search of the vehicle which is departmental policy.

'Q When you say inventory search, what do you mean by that?

truck was ever later removed from the used car lot and taken into custody by the police.

It seems clear from *Opperman* and cases that proceeded and followed it, that the right to an inventory search begins at the point where the police have a lawful right to impound the vehicle. *Brown v. Superior Court*, 119 Ariz. 205, 580 P.2d 343 (1978); *State v. Boster*, 217 Kan. 618, 539 P.2d 294 (1975); *Wagner v. Commonwealth*, 581 S.W.2d 352 (Ky. 1979); *State v. McDaniel*, 156 N.J. Super 347, 383 A.2d 1174 (1978); *State v. Thirdgill*, 46 Or. App. 595, 613 P.2d 44 (1980); *Annot.* 48 A.L.R.3d 537, 551 (1973). This initial step must be taken otherwise there is no rationale for the inventory search since it is based on protection of the owner's property, as well as the police against claims that property has been lost or stolen from the vehicle, while it is in police custody. Most courts that have considered this point have held that if the car is never taken into police custody then there is no basis for an inventory search. *State v. Creel*, 142 Ga. App. 158, 235 S.E.2d 628 (1977); *State v. LaRue*, 368 So.2d 1048 (La. 1979); *Manalansan v. State*, 45 Md. App. 667, 415 A.2d 308 (1980); *State v. Gluck*, 83 Wash.2d 424, 518 P.2d 703 (1974).

Even if we were to assume that there had been an actual lawful impoundment of the truck,[6] the inventory search

---

"A  Well, it is not actually a search. It is a check of all items in the vehicle. It is done for safekeeping of the person's property who has been arrested.

"Q  Were there any other reasons, to your knowledge, why it is done?

"A  No, that is the primary purpose of it.

"Q  What did this inventory reveal, if anything?

"THE COURT: Mr. Richardson, I think I would like to know where the truck was at the time this was done.

"By Mr. Richardson:

"Q  Where was the truck at the time this inventory was done?

"A  It was located in the parking lot at Fort Neal Motors.

"Q  Had it been removed from its original location, that is the location you first observed it?

"A  No, sir."

[6] The issue of whether the police had a lawful right to impound the vehicle has not been raised in this case. In *State v. Singleton*, 9 Wash.

would not be proper in this case because there was no showing that the police saw any items of personal property in the interior of the vehicle, which would warrant the initiation of an inventory search. Although there is some divergence of opinion in this area, we believe that the more reasoned view requires a sighting of some personal property within the motor vehicle before an inventory search can be initiated. *United States v. Mitchell,* 458 F.2d 960 (9th Cir. 1972); *United States v. Fuller,* 277 F. Supp. 97 (D. D.C. 1967), conviction aff'd, 433 F.2d 533 (1970); *Mozzetti v. Superior Court,* 4 Cal.3d 699, 484 P.2d 84, 94 Cal. Rptr. 412 (1971); *People v. Counterman,* 192 Colo. 152, 556 P.2d 481 (1976); *State v. Boster,* 217 Kan. 618, 539 P.2d 294 (1975); *State v. Achter,* 512 S.W.2d 894 (Mo. App. 1974); *State v. All,* 17 N.C. App. 284, 193 S.E.2d 770 (1973), *cert. denied,* 414 U.S. 866, 94 S.Ct. 51, 38 L.Ed.2d 85 (1973); *State v. McDougal,* 68 Wis.2d 399, 228 N.W.2d 671 (1975).

---

App. 327. 511 P.2d 1396, 1399-1400 (1973), the court after surveying a number of other cases made this summary:

"Reasonable cause for impoundment may, for example, include the necessity for removing (1) an unattended-to car illegally parked or otherwise illegally obstructing traffic; (2) an unattended-to car from the scene of an accident when the driver is physically or mentally incapable of deciding upon steps to be taken to deal with his property, as in the case of the intoxicated, mentally incapacitated or seriously injured driver; (3) a car that has been stolen or used in the commission of a crime when its retention as evidence is necessary; (4) an abandoned car; (5) a car so mechanically defective as to be a menace to others using the public highway; (6) a car impoundable pursuant to ordinance or statute which provides therefor as in the case of forfeiture."

We have recognized that impoundment of a vehicle was permissible where its occupants were arrested for intoxication in a public place and its owner could not be located. *State v. Craft,* 165 W. Va. 741, 272 S.E.2d 46 (1980). Most courts hold that the mere fact that the driver is arrested does not give automatic grounds for impoundment of the vehicle if there exist readily available arrangements for the vehicle's disposition. *Dunkum v. State,* 138 Ga. App. 321, 226 S.E.2d 133 (1976); *People v. Von Hatten,* 52 Ill. App.3d 338, 10 Ill. Dec. 168, 367 N.E.2d 556 (1977); *City of Danville v. Dawson,* 528 S.W.2d 687 (Ky. 1975); *State v. Slockbower,* 79 N.J. 1, 397 A.2d 1050 (1979); *State v. Goodrich,* 256 N.W.2d 506 (Minn. 1977); *State v. Singleton,* 9 Wash. App. 327, 511 P.2d 1396 (1973).

The basis for this rule is that unless some personal property is seen in plain view in the vehicle there is little, if any, basis for an inventory search. The purpose for a routine police inventory search is to secure personal property from being stolen or lost while the car is in custody but without any visible personal property there is a diminished likelihood that the car will be broken into. On the other hand, it must be remembered that once the vehicle has been impounded the police have the right to secure it by rolling up the windows and locking the doors. Any personal property seen in the course of this action can lead to a fuller inventory search. *Harris v. United States*, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968).[7]

We conclude under the foregoing law that the State failed to prove the prerequisites for a valid inventory search. There was no proof that the vehicle was in fact ever impounded nor was there any demonstration that there were articles of personal property in plain view inside the truck. Therefore, the 1969 Ford title should not have been admitted as evidence.

## II.

The next error raised addresses a jury instruction that utilized the following language: "The law does not require, however, proof amounting to an absolute certainty nor proof beyond the possibility of mistake." In *State v. Byers*, 159 W. Va. 596, 224 S.E.2d 726 (1976), we held the State's reasonable doubt instruction to be erroneous because it permitted the jury to impose their own personal standard instead of a common legal standard as to what constitutes a reasonable doubt. The instruction in *Byers* contained

---

[7] While there is a divergence of authority as to whether an inventory search authorizes exploration of sealed containers or into a locked trunk or other secured portions of the vehicle, we believe the better view is that it does not. *United States v. Lawson*, 487 F.2d 468 (8th Cir. 1973); *State v. Daniel*, 589 P.2d 408 (Alaska 1979); *People v. Minjares*, 24 Cal.3d 410, 591 P.2d 514, 153 Cal. Rptr. 224 (1979), *cert. denied*, 444 U.S. 887, 100 S.Ct. 181, 62 L.Ed.2d 117 ; *State v. Gwinn*, 301 A.2d 291 (Del. 1972); *Jones v. State*, 345 So.2d 809 (Fla. App. 1977); *People v. Grana*, 185 Colo. 126, 527 P.2d 543 (1974); *State v. Parker*, 153 N.J. Super. 481, 380 A.2d 291 (1977); *State v. Downes*, 285 Or. 369, 591 P.2d 1352 (1979); *State v. McDougal*, 68 Wis.2d 399, 228 N.W.2d 671 (1975).

54

language similar to the portion above quoted.[8] In *Byers*, we declined to hold the "proof amounting to absolute certainty nor proof beyond the possibility of mistake" erroneous standing alone.

In *State v. Starr*, 158 W. Va. 905, 216 S.E.2d 242 (1975), we stated that instructions which vary the reasonable doubt standard or attempt to explain it "are strongly discouraged, because they certainly confuse the jury as to the meaning of reasonable doubt and may by themselves be prejudicial to the defendant for the obvious reason that the jury is invited to convict on a lesser standard of proof." A similar admonition can be found in *State v. Powers*, 91 W. Va. 737, 113 S.E. 912 (1922).

We, as well as the United States Supreme Court, have recognized the fundamental right to have a presumption of innocence and burden of proof instruction in a criminal case. *Taylor v. Kentucky*, 436 U.S. 478, 98 S.Ct. 1930, 56 L.Ed.2d 468, (1978); cf. *Coffin v. United States*, 156 U.S. 432, 15 S.Ct. 394, 39 L.Ed. 481 (1895); *State v. Cokeley*, 159 W. Va. 664, 226 S.E.2d 40 (1976). Because of the crucial significance of such instructions, most appellate courts have cautioned against altering the form of such instruction. *United States v. Bridges*, 499 F.2d 179 (7th Cir. 1974), *cert. denied*, 419 U.S. 1010, 95 S.Ct. 330, 42 L.Ed.2d 284; *Scurry v. United States*, 347 F.2d 468 (D.C. Cir. 1965); *State v. Boyken*, 217 N.W.2d 218 (Iowa 1974); *Commonwealth v. Ferreira*, 373 Mass. 116, 364

---

[8] The instruction in *Byers* was:

" ' The Court instructs the jury that the accused is presumed to be innocent and that such presumption goes with him through all stages of the trial until the State, upon which the burden of proof rests, has shown beyond a reasonable doubt that the defendant is guilty. A doubt engendered by sympathy or by a dislike to accept the responsibility of convicting the defendant is not a reasonable doubt. *The law does not require proof* amounting to absolute certainty, nor proof *beyond all possibility of mistake.* If, after having carefully and impartially heard and weighed all the evidence, you reach the conclusion that the *defendant is guilty with such degree of certainty that you would act upon the faith of it in your own most important and critical affairs,* then the evidence is sufficient to warrant a verdict of guilty.' (emphasis added)" 159 W. Va. at 607, 224 S.E.2d at 733-34 (Emphasis in original).

N.E.2d 1264 (1977); *State v. Flippin*, 280 N.C. 682, 186 S.E.2d 917 (1972); *Commonwealth v. Young*, 456 Pa. 102, 317 A.2d 258 (1974). Since this case must be retried, we offer a standard instruction on the presumption of innocence and burden of proof.[9]

In the present case, we hold that the quoted language standing alone will not constitute reversible error but when coupled with other language which is at substantial variance with the standard instruction on the presumption of innocence and burden of proof, such deviant instruction may constitute reversible error.

---

[9] The law presumes a defendant to be innocent of crime. Thus a defendant, although accused, begins the trial with a "clean slate"—with no evidence against him. And the law permits nothing but legal evidence presented before the jury to be considered in support of any charge against the accused. So the presumption of innocence alone is sufficient to acquit a defendant, unless the jurors are satisfied beyond a reasonable doubt of the defendant's guilt after careful and impartial consideration of all the evidence in the case.

It is not required that the government prove guilt beyond all possible doubt. The test is one of reasonable doubt. A reasonable doubt is a doubt based upon reason and common sense—the kind of doubt that would make a reasonable person hesitate to act. Proof beyond a reasonable doubt, therefore, must be proof of such a convincing character that a reasonable person would not hesitate to rely and act upon it.

The jury will remember that a defendant is never to be convicted on mere suspicion or conjecture.

The burden is always upon the prosecution to prove guilt beyond a reasonable doubt. This burden never shifts to a defendant; for the law never imposes upon a defendant in a criminal case the burden or duty of calling any witnesses or producing any evidence.

So if the jury, after careful and impartial consideration of all the evidence in the case, has a reasonable doubt that a defendant is guilty of the charge, it must acquit. If the jury views the evidence in the case as reasonably permitting either of two conclusions—one of innocence, the other of guilt—the jury should of course adopt the conclusion of innocence.

This instruction is almost identical to the widely used federal instruction, 1 E. Devitt & C. Blackmar, *Federal Jury Practice and Instructions* §11.14.

## III.

The final ground of error centers on a part of the charge to the jury which advised the jury "that a person is presumed to intend that which they do." The United States Supreme Court in *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979), condemned a similar instruction as constituting an impermissive burden shifting presumption relating to intent under its prior decision of *Mullaney v. Wilbur*, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed. 2d 508 (1975).

We have followed the mandate of *Sandstrom* in *State v. O'Connell*, 163 W. Va. 366, 256 S.E.2d 429 (1979), where we held that an instruction which was virtually identical to the one in this case violated the *Sandstrom* principle and stated this Syllabus Point:

> "In a criminal prosecution, it is constitutional error to give an instruction which supplies by presumption any material element of the crime charged."

The State, in its brief, acknowledges that the instruction is bad under *Sandstrom* and *O'Connell* because it creates a presumption of criminal intent which the defendant must then rebut. This is impermissible since the element of intent must be proved by the State beyond a reasonable doubt.

For the foregoing reasons, the judgment of the Circuit Court is reversed and the case is remanded for a new trial.

*Reversed and*
*Remanded.*