In the

# United States Court of Appeals

## For the Seventh Circuit

No. 10-1879

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

DEWAYNE CARTWRIGHT,

*Defendant-Appellant*.

Appeal from the United States District Court
for the Southern District of Indiana, Indianapolis Division.
No. 08-CR-142—**William T. Lawrence**, *Judge*.

ARGUED OCTOBER 18, 2010—DECIDED DECEMBER 29, 2010

Before POSNER and WOOD, *Circuit Judges*, and
ADELMAN, *District Judge*.[*]

ADELMAN, *District Judge*. Police pulled Dewayne Cartwright over for a traffic violation, arrested him when he failed to produce a driver's license and gave a false name, then searched the car incident to his arrest, locating a gun in the back seat. Charged with possessing

---

[*] Of the Eastern District of Wisconsin, sitting by designation.

a firearm as a felon, *see* 18 U.S.C. § 922(g)(1), Cartwright moved to suppress the firearm, relying on *Arizona v. Gant*, 129 S. Ct. 1710 (2009), a decision that came down subsequent to his arrest and which narrowed the scope of a permissible automobile search incident to arrest. The district court held an evidentiary hearing, then denied the motion, concluding that the police would have inevitably discovered the firearm pursuant to an inventory search of the car. Cartwright entered a conditional guilty plea, and the district court sentenced him to 84 months in prison. Cartwright now appeals the denial of his motion to suppress, arguing that the district court erred in applying the inevitable discovery doctrine. We affirm.

## I. BACKGROUND

On August 12, 2008, at about 9:00 p.m., Officer Richard Stratman of the Indianapolis Metropolitan Police Department ("IMPD"), while on routine patrol, noticed a vehicle without an illuminated rear license plate, a violation of Indiana law. *See* Ind. Code § 9-19-6-4(e). Stratman stopped the vehicle, which pulled into a grocery store parking lot, stopping between two rows of parking spaces but not in a designated spot. The car was occupied by the driver, Cartwright; a front seat passenger, Ciera Golliday, who owned the car; and in the back seat, Golliday's two- or three-year-old child.

Stratman asked Cartwright for his driver's license, but Cartwright replied that he did not have one in his possession. Stratman asked the driver for his name, and

Cartwright gave a name Stratman could not confirm. Based on Cartwright's nervous demeanor and refusal to identify himself, Stratman removed him from the car, handcuffed him, and placed him under arrest. *See* Ind. Code § 34-28-5-3.5 ("A person who knowingly or intentionally refuses to provide either the person's: (1) name, address, and date of birth; or (2) driver's license, if in the person's possession; to a law enforcement officer who has stopped the person for an infraction or ordinance violation commits a Class C misdemeanor.").

In the meantime, Officer James Barleston arrived on the scene and removed Golliday and her child from the car. Subsequent to Cartwright's arrest, Barleston searched the back seat and found a loaded Ruger semi-automatic pistol. After removing and securing the gun, Barleston completed a search of the car, finding nothing other than old clothes.

Pursuant to IMPD policy, Stratman had the car towed, as Cartwright was under arrest and Golliday did not have a driver's license. Also pursuant to IMPD policy, Barleston performed an inventory search of the car prior to its impoundment, finding nothing of value, and filled out a tow slip, listing the reason for the tow as "arrest." However, contrary to IMPD policy, Barleston failed to list all of the car's contents, only the keys. He testified that, although he usually lists the inventory of a vehicle on the tow slip, he did not do so in the present case because he found nothing of importance.

Golliday testified that upon learning the car would be towed she asked the officers to allow her to have some-

one else move it, but they refused. She stated that because she lacked the funds to retrieve the car from impoundment she would have allowed anyone, even a stranger, to move the car. Stratman and Barleston testified that they did not recall Golliday making any such request.

At the time of this encounter, our circuit allowed police to search a vehicle incident to the driver's arrest even after having removed and secured the driver. *See, e.g.*, *United States v. Sholola*, 124 F.3d 803, 817-18 (7th Cir. 1997); *see also New York v. Belton*, 453 U.S. 454, 460 (1981) (holding that when an officer has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the interior of that automobile). However, in *Gant*, the Supreme Court narrowed the rule, holding that:

> Police may search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest. When these justifications are absent, a search of an arrestee's vehicle will be unreasonable unless police obtain a warrant or show that another exception to the warrant requirement applies.

129 S. Ct. at 1723-24.

In response to Cartwright's motion to suppress below, the government acknowledged that *Gant* made a search incident to arrest improper but argued that the police would have inevitably discovered the gun pursuant to

the inventory search. The district court agreed and denied the motion.

## II.  DISCUSSION

### A.  Standard of Review

We apply a dual standard of review to a district court's denial of a suppression motion, reviewing legal conclusions de novo and findings of fact for clear error. *United States v. Jackson*, 598 F.3d 340, 344 (7th Cir.), *cert. denied*, 131 S. Ct. 435 (2010). In the context of an inventory search, we review for clear error a district court's conclusion that the police followed standard impoundment procedures, but our review of the reasonableness of the inventory search and seizure is plenary. *United States v. Cherry*, 436 F.3d 769, 772-73 (7th Cir. 2006).

### B.  Inevitable Discovery

Under the inevitable discovery doctrine, if the government can establish that the evidence at issue, even though unlawfully obtained, would have inevitably been discovered through lawful means, then the deterrence rationale animating the exclusionary rule has so little basis that the evidence should be admitted. *Nix v. Williams*, 467 U.S. 431, 444 (1984). To obtain the benefit of the doctrine, the government must show a chain of events that would have led to a warrant or some other justification independent of the unlawful search. *United States v. Brown*, 64 F.3d 1083, 1085 (7th Cir. 1995).

Inventory searches constitute a well-recognized exception to the warrant requirement and are reasonable under the Fourth Amendment. *See South Dakota v. Opperman*, 428 U.S. 364, 376 (1976). In *Opperman*, the Supreme Court noted that local police departments routinely inventory and secure the contents of impounded automobiles. Doing so protects the police from potential danger, protects the owner's property while it remains in police custody, and protects the police against claims of lost, stolen, or damaged property. *Id.* at 369. An inventory search is lawful if (1) the individual whose possession is to be searched has been lawfully arrested, and (2) the search is conducted as part of the routine procedure incident to incarcerating an arrested person and in accordance with established inventory procedures. *United States v. Jackson*, 189 F.3d 502, 508-09 (7th Cir. 1999). "Both the decision to take the car into custody and the concomitant inventory search must meet the strictures of the Fourth Amendment." *United States v. Duguay*, 93 F.3d 346, 351 (7th Cir. 1996). "[T]he decision to impound (the 'seizure') is properly analyzed as distinct from the decision to inventory (the 'search')." *Id.*

In the present case, the district court found that, pursuant to IMPD policy, the officers towed the vehicle from the scene because Golliday, the passenger/owner, did not have a driver's license and Cartwright was under arrest. The district court further noted that under IMPD policy the police conduct inventory searches prior to impounding a vehicle. The district court found that the police conducted such a search in the present case and

concluded that had they not already found the gun, they would inevitably have done so.

Cartwright argues the district court ignored Golliday's testimony that she could have found someone to move the car, making impoundment unnecessary. He relies primarily on *Duguay*, in which we found unreasonable the decision to impound a car in which the defendant was a passenger because the defendant's girlfriend, the driver, could have moved it. We said that: "The decision to impound an automobile, unless it is supported by probable cause of criminal activity, is only valid if the arrestee is otherwise unable to provide for the speedy and efficient removal of the car from public thorough-fares or parking lots." *Duguay*, 93 F.3d at 353. This case is nothing like *Duguay*, and we find that the officers acted reasonably in impounding the car here.

As we have noted, the police followed IMPD policy in deciding to tow the car. While that fact is important, it is not dispositive for purposes of the Fourth Amendment. The existence of a police policy, city ordinance, or state law alone does not render a particular search or seizure reasonable or otherwise immune from scrutiny under the Fourth Amendment. *See Sibron v. New York*, 392 U.S. 40, 61 (1968) ("The question in this Court upon review of a state-approved search or seizure is not whether the search (or seizure) was authorized by state law. The question is rather whether the search was reasonable under the Fourth Amendment."); *Miranda v. City of Cornelius*, 429 F.3d 858, 864 (9th Cir. 2005) (explaining that "the decision to impound pursuant to

the authority of a city ordinance and state statute does not, in and of itself, determine the reasonableness of the seizure under the Fourth Amendment"). We must therefore take an independent look at the policy Indianapolis followed.

Unlike the police department in *Duguay,* which had no standardized procedure, *see id.* at 352, the IMPD has a comprehensive towing and impoundment policy, which the government introduced at the evidentiary hearing below. The policy sets forth the circumstances under which the police may tow a car, establishes the procedures officers must follow in calling for a tow, requires an inventory search whenever an officer takes a vehicle into custody, and specifically forbids inventory searches "motivated by an officer's desire to investigate and seize evidence of a criminal act." *See Cherry*, 436 F.3d at 776-77 (Posner, J., dissenting) (explaining that established inventory search procedures protect against such pretext searches). As is pertinent here, the IMPD policy permits the impoundment of vehicles "operated by a non-licensed or suspended driver" or "by [a] person under custodial arrest for any charge." Because Golliday was unlicensed and Cartwright under arrest, the policy permitted impoundment in the present case. *See United States v. Velarde*, 903 F.2d 1163, 1166 (7th Cir. 1990) (upholding police impoundment where neither driver nor passenger had a valid driver's license). The IMPD policy is sufficiently standardized, the district court committed no clear error in finding that the officers followed the policy, and, for the reasons that follow, we find the officers' actions reasonable under the circumstances.

Unlike *Duguay*, where the officers impounded the car despite the presence on the scene of a licensed driver readily able to move it, 93 F.3d at 353, the record in this case shows that the unlicensed Golliday had no means of ensuring the "speedy and efficient" removal of her car from the parking lot. At the evidentiary hearing, Golliday testified that she called "someone" to come and pick up the car, but she never identified that person or stated how long it would have taken him/her to get there. Golliday mentioned that her mother-in-law worked at the grocery store, but she was not working on the night of this encounter. Golliday said that she was "vaguely familiar" with some of the store's other employees, but the record contains no evidence that any of those acquaintances were present and willing to assume responsibility for the car. Ultimately, Golliday stated that she would have allowed anyone, even a licensed stranger, to move the car. The Fourth Amendment does not require that the police offer these sorts of alternatives to impoundment. *See Colorado v. Bertine*, 479 U.S. 367, 373-74 (1987) (holding that the police need not give a motorist "an opportunity to make alternative arrangements" that avoid impoundment and inventory); *United States v. Clinton*, 591 F.3d 968, 972 (7th Cir.) ("That Clinton's girlfriend, the owner of the car, could have been called to take possession of the car, is irrelevant."), *cert. denied*, 131 S. Ct. 246 (2010); *Cherry*, 436 F.3d at 775 (stating that officers need not invite or accept input from the motorist as to the appropriate disposition of his vehicle; "nor does the Fourth Amendment demand that police offer a motorist an alternative means of re-

moving his vehicle that will avoid the need to tow it and conduct an inventory search"); *United States v. Privett*, 68 F.3d 101, 104 (5th Cir. 1995) (finding a search within the inventory exception, even though the vehicle could have been towed to the motorist's home rather than an impound lot); *United States v. Skillern*, 947 F.2d 1268, 1275-76 (5th Cir. 1991) (holding that the police were not required to offer a motorist an alternative to impoundment).[1]

---

[1] At oral argument, Cartwright's lawyer advised that the grocery store permitted abandoned vehicles to remain in the parking lot for seventy-two hours, possibly enough time for Golliday to find a licensed driver or fix the license plate lamp. However, the Fourth Amendment did not require the officers to explore such alternatives with the store owner. Nor were the officers obliged to leave the car where it was—stopped between two rows of parking spaces—as this may have created a hazard to others using the lot or rendered the police vulnerable to claims had the car been stolen, vandalized, or damaged. *See, e.g.*, *United States v. Brown*, 787 F.2d 929, 932 (4th Cir. 1986) ("[W]e are of opinion that the police officer in this case could reasonably have impounded Brown's vehicle either because there was no known individual immediately available to take custody of the car, or because the car could have constituted a nuisance in the area in which it was parked [i.e., a private lot adjacent to apartments and a business.]"); *Cabbler v. Superintendent, Va. Penitentiary*, 528 F.2d 1142, 1143, 1146 (4th Cir. 1975) (holding that the police do not violate the Fourth Amendment when they tow a vehicle to protect it or to remove a nuisance after arresting the driver

(continued...)

Moreover, no one could have lawfully driven Golliday's car from the scene, as it did not have the functional license plate lamp required by Indiana law. Ind. Code § 9-19-6-4(e) ("Either a tail lamp or a separate lamp must be placed and constructed so as to illuminate the rear registration plate with a white light and make the plate clearly legible from a distance of fifty (50) feet to the rear."). In the absence of such a lamp, the car was not lawfully operable. *See, e.g.*, *Freeman v. State*, 904 N.E.2d 340, 342 (Ind. Ct. App. 2009).

Finally, Cartwright argues that Barleston did not conduct the inventory search properly, failing to make a complete list of the property he found in Golliday's car. While Cartwright correctly points out that IMPD policy required Barleston to make such a list, Barleston's failure to do so does not undermine the proposition that the police would inevitably have found the gun through a lawful inventory search. In determining

---

[1] (...continued)
away from home if the driver has no means immediately available for safekeeping of the vehicle); *United States v. Cauthen*, 669 F. Supp. 2d 629, 633-36 (M.D.N.C. 2009) (discussing the need to impound a vehicle for the purpose of protecting it after the arrest of the driver, even when the vehicle was parked in a private lot); *Hess v. Ryan*, 651 F. Supp. 2d 1004, 1045 (D. Ariz. 2009) ("The police generally have the authority to impound a vehicle following an arrest of its driver, as part of their 'care-taking' functions, whether to avoid safety concerns, to insure the safety of the vehicle, or simply to keep it from being abandoned on another's property.").

whether the inevitable discovery doctrine applies, the court considers a hypothetical situation. Of course, by the time Barleston conducted the actual inventory search here, the gun had already been seized, and Cartwright was already under arrest. But the district court found, based on the evidence and the IMPD policy, that an inventory search would have been conducted and that the gun would have been found pursuant to such a search. The evidence supports that conclusion. In any event, we have held that minor deviations from department policy do not render an inventory search unreasonable. *See United States v. Lomeli*, 76 F.3d 146, 148-49 (7th Cir. 1996).[2]

### III. CONCLUSION

For the foregoing reasons, we AFFIRM Cartwright's conviction.

---

[2] Because we affirm based on inevitable discovery, we need not address the government's alternate argument that the search should be upheld under the good faith doctrine.

---