No. 14-0174 - State v. Noel

**FILED**

**November 6, 2015**
**released at 3:00 p.m.**
**RORY L. PERRY II, CLERK**
**SUPREME COURT OF APPEALS**
**OF WEST VIRGINIA**

LOUGHRY, J., dissenting:

I dissent from the majority's overly simplistic and erroneous conclusion that the petitioner's conviction should be reversed pursuant to *Arizona v. Gant*, 556 U.S. 332 (2009). In its haste to invalidate the officer's search of the vehicle, the majority failed to thoroughly consider whether the evidence at issue would have been inevitably discovered during a lawful inventory search following the petitioner's arrest. In that regard, it is well-established that "the inventory search constitutes a well-defined exception to the warrant requirement." *Illinois v. Lafayette*, 462 U.S. 640, 643 (1983). Furthermore, the United States Supreme Court has long held that "when, as here, the evidence in question would inevitably have been discovered without reference to the police error or misconduct, there is no nexus sufficient to provide a taint and the evidence is admissible." *Nix v. Williams*, 467 U.S. 431, 448 (1984). In this case, the majority has failed to undertake any analysis of the law concerning inventory searches. As such, its legally incomplete and unsound conclusion that the evidence should have been suppressed is simply wrong.

Although *Gant* may preclude a finding that the evidence was obtained through a reasonable search incident to a lawful arrest, even a first-year law student knows that the

1

legal analysis does not end there. The majority acknowledged in its new syllabus point that the evidence may be admissible if another exception to the warrant requirement applies; yet, it summarily concluded that the trial court erred by refusing to suppress the evidence pursuant to *Gant*. Blithely dismissing the State's contention that the evidence would have been recovered pursuant to a valid inventory search, the majority misapplied this Court's decision in *State v. Goff*, 166 W.Va. 47, 272 S.E.2d 457 (1980).

The majority's entire discussion of *Goff* and the law related to inventory searches is relegated to a footnote at the end of the opinion. In that skeletal footnote, the majority concludes that an inventory search was not justified by simply citing syllabus point two of *Goff* which states: "An inventory search is not proper when there is no showing that the police saw any items of personal property in the interior of the vehicle, which would warrant the initiation of an inventory search." 166 W.Va. at 47, 272 S.E.2d at 459. In doing so, the majority completely overlooked the legal analysis underlying that holding. In *Goff*, this Court recognized that the rationale for an inventory search is three-fold: "(1) the protection of the owner's property while it remains in police custody; (2) the protection of the police against claims or disputes over lost or stolen property; and (3) the protection of the police from potential danger." 166 W.Va. at 49, 272 S.E.2d at 459 (citing *South Dakota v. Opperman*, 428 U.S. at 364, 369 (1976)). In the case at bar, the majority noted that Officer Adams testified "that [the petitioner] repeatedly glanced inside his vehicle and at the

2

vehicle's center console." Critically, the majority ignored the fact that such behavior would obviously lead a reasonable police officer to conclude that the petitioner was concerned about some item of personal property located in the center console. Given the fact that the vehicle was being taken into police custody because there was no one else to remove it from the scene, and given the arresting officer's awareness of the petitioner's apparent concern over the contents of the center console, any reasonable person would conclude that an inventory search was appropriate.

It is also important to note that at the time *Goff* was decided in 1980, it was recognized that there was a "divergence of opinion" as to when an inventory search could be initiated. 166 W.Va. at 52, 272 S.E.2d at 461. A significant number of courts have since firmly adopted the view that when the police have the authority to impound a vehicle, they have a concomitant right to examine and inventory the vehicle's contents without a warrant. *See United States v. Jackson*, 682 F.3d 448, 455 (6th Cir. 2012) ("It is settled law that the police may conduct an inventory search of an automobile that is being impounded without running afoul of the Fourth Amendment."); *United States v. Clinton,* 591 F.3d 968, 972 (7th Cir. 2010) ("Police who lawfully impound a vehicle may take an inventory search of its contents, because they are responsible for those contents while the car and its contents are in their custody."); *United States v. Kimhong Thi Le*, 474 F.3d 511, 515 (8th Cir. 2007) ("Law enforcement may search a lawfully impounded vehicle to inventory its contents

without obtaining a warrant."); *United States v. Kinzalow*, 236 Fed. Appx. 414, 420 (10th Cir. 2007) ("When a vehicle is legally impounded, police may, following standardized procedures and in the absence of bad faith, perform an inventory search of the contents of the vehicle."); *United States v. Morris,* 179 Fed. Appx. 825, 827 (3rd Cir. 2006) ("An inventory search conducted by the police before the vehicle is towed is lawful if the police have grounds for impounding or otherwise taking custody of the vehicle, and the search is conducted pursuant to standard police procedures aimed at protecting the owner's property and protecting the police from the owner's later accusations of theft, loss or damage."); *United States v. Pappas*, 452 F.3d 767, 771 (8th Cir. 2006) ("An inventory search by police prior to the impoundment of a vehicle is generally a constitutionally reasonable search."); *United States v. Kennedy*, 427 F.3d 1136, 1143 (8th Cir. 2005) ("Police may conduct a warrantless search of a lawfully-impounded vehicle even in the absence of probable cause."); *United States v. Stanley*, 4 Fed. Appx. 148, 150 (4th Cir. 2001) ("An inventory search, even if not thorough and complete, satisfies the Fourth Amendment if administered in good faith."); *West v. Duncan,* 179 F.Supp.2d 794, 803 (N.D. Ohio 2001) ("[P]olice may search a vehicle properly impounded or towed in order to establish the contents of the car."); *United States v. Logan*, 744 F.Supp 735, 746 (N.D. Miss. 1990) ("Reasonable inventory procedures administered in good faith do not violate the fourth amendment.").

Furthermore, many other courts have found evidence to be admissible pursuant to the inevitable discovery doctrine based on inventory search procedures. "In such cases, the court typically concludes that even if the invalid search had not been conducted, the evidence would nonetheless have been discovered in the course of a valid inventory search conducted pursuant to standardized, established procedures." *United States v. Mendez*, 315 F.3d 132, 138 (2nd Cir. 2002). For example, in *Mendez*, the defendant was convicted of "possession of a firearm as a previously convicted felon in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2)." 315 F.3d at 133. The defendant appealed his conviction, arguing that the trial court erred in failing to suppress the gun because the police lacked probable cause to search the glove compartment of his automobile where the evidence was located. 315 F.3d at 133. He further asserted that the evidence was not admissible under the "search-incident-to arrest exception" to the exclusionary rule. *Id.* While the appellate court found that the evidence had been unlawfully obtained, it nonetheless affirmed the defendant's conviction because "the evidence would have inevitably been discovered in a valid inventory search." 315 F.3d at 139. The court explained that "[h]ad the two officers not found the evidence during the earlier searches, they would inevitably have found it in the course of a valid inventory search, which [Officer] Foster would subsequently have made. Thus, the evidence was properly admitted under the inevitable discovery exception to the exclusionary rule." *Id.*

5

In *United States v. Cartwright*, 630 F.3d 610 (7th Cir. 2010), which is more factually similar to the case at bar, the defendant was stopped for failure to have an illuminated rear license plate. *Id.* at 612. Upon being pulled over, the defendant was placed under arrest because he refused to identify himself or produce a driver's license. *Id.* The officer then searched the car incident to the arrest and discovered a weapon that the defendant later moved to have excluded from evidence pursuant to *Gant*. *Id.* Upon review of all relevant law, including *Gant*, the Seventh Circuit found that, in light of the defendant's arrest, the vehicle required impoundment[1] and, therefore, was subject to an inventory search that would have inevitably led to the discovery of the weapon. *Id.* at 614. The court rejected the argument that the officer's failure to properly prepare an inventory of the vehicle nullified the search explaining that "minor deviations from department policy do not render an inventory search unreasonable." *Id.* at 616.

Several other courts have also concluded that *Gant* does not undermine the inventory search exception or the inevitable discovery doctrine. *See United States v. Bogle*, 522 Fed. App'x 15, 20-21 (2nd Cir. 2013) ("Although we are skeptical that the subsequent search of Bogle's Jaguar at the scene of the arrest can also be justified as a search incident to arrest [pursuant to *Gant*], we need not reach the issue here. The officers properly

---

[1]The owner of the automobile was a passenger, but she was unlicensed and, therefore, unable to move the car.

impounded Bogle's car then performed a routine inventory search, during which the round recovered from the floor of the passenger seat during the challenged search would inevitably have been discovered." (citations omitted)); *United States v. Hairston*, 409 Fed. App'x 668, 670 (4th Cir. 2011) ("We need not reach the *Gant* issue as the evidence obtained from the vehicle search is admissible under the inevitable discovery doctrine. . . . In this case, if the officer had not conducted a search incident to arrest, an inventory search of the car would have been conducted, wherein the evidence in question would have been discovered."); *United States v. Contreras*, 348 Fed. App'x 263, 264-65 (9th Cir. 2009) ("We hold that the search of Contreras' car violated the Fourth Amendment because Contreras was not within reaching distance of the passenger compartment at the time of the search and it was not reasonable for police to believe that the car contained evidence of Contreras' offense . . . . Nonetheless, we affirm the ruling below because the district court did not clearly err in finding that police inevitably would have discovered the contraband at issue."); *United States v. Garreau*, 735 F. Supp. 2d 1155, 1166 (D.S.D. 2010), *aff'd*, 658 F.3d 854 (8th Cir. 2011) ("[A]lthough the handgun was found during a search incident to arrest contrary to *Gant*, the handgun would have been inevitably discovered as part of an inventory search following the arrest of Garreau for driving with a suspended license and on the outstanding warrant. . . . Due to his arrest and inability to identify anyone who could pick up the vehicle from the site of the arrest, Garreau's vehicle would have been inevitably impounded, thereby mandating an inventory of the vehicle's contents."); *United States v. Morillo*, 2009 WL

3254431 at *8 (E.D.N.Y. Oct. 9, 2009) ("[T]he gun is also admissible because the arresting officers would have inevitably found it during a later inventory search of Morillo's backpack at the stationhouse. . . . [T]he [inevitable discovery and inventory search] doctrines may be combined to admit evidence under a theory of inevitable discovery in an inventory search.").

In syllabus point four of *State v. Flippo,* 212 W.Va. 560, 575 S.E.2d 170 (2002), this Court held:

> To prevail under the inevitable discovery exception to the exclusionary rule, Article III, Section 6 of the West Virginia Constitution requires the State to prove by a preponderance of the evidence: (1) that there was a reasonable probability that the evidence would have been discovered by lawful means in the absence of police misconduct; (2) that the leads making the discovery inevitable were possessed by the police at the time of the misconduct; and (3) that the police were actively pursuing a lawful alternative line of investigation to seize the evidence prior to the time of the misconduct.

Applying these requirements to the facts of this case, it is clear that law enforcement would have inevitably discovered the drugs in the center console of the vehicle. Prior to the time Officer Adams opened the center console, he already possessed the evidence that led to the petitioner's arrest and conviction for fleeing in a vehicle. In that regard, Officer Adams had signaled his lights and sirens for the petitioner to stop but instead the petitioner initiated a high-speed chase through traffic and residential neighborhoods. The petitioner's arrest for fleeing alone required the impoundment of his vehicle and an inventory search because no

8

person was available to remove the vehicle.[2] Given these facts, there was more than a "reasonable probability" that the drugs in the center console would have been discovered in a lawful inventory search resulting from evidence possessed by Officer Adams at the time he opened the center console. Moreover, the drugs would have been discovered in a "lawful alternative line of investigation" as an inventory of the vehicle would have, and did, follow the petitioner's arrest for fleeing in a vehicle. As Officer Adams testified,

> We did an inventory check of the car. We actually do inventories on cars that we tow for the fact that we like to know what's in them so someone can't say that something turned up missing after the fact, or that the towing company stole something out of their vehicle at that time.

In light of the foregoing, I would have affirmed the petitioner's convictions based on the fact that the drug evidence would have been inevitably discovered during a valid inventory search of the vehicle. Had the majority actually undertaken any legal analysis of this Court's prior holding in *Goff*, it surely would have concluded that an inventory search was appropriate. In fact, it is hard to imagine any reasonable jurist concluding otherwise given the petitioner's constant obsession with the vehicle's center console.

---

[2]The petitioner indicated that the vehicle belonged to the his girlfriend who lived in Beckley, West Virginia.

9

Notwithstanding the fact that this evidence should have been admissible under *Goff* and *Flippo* as it would have been obtained pursuant to a subsequent valid inventory search, this Court should have taken the opportunity to revisit *Goff*'s more restrictive holding regarding the propriety of inventory searches. The majority missed the perfect opportunity to bring West Virginia's criminal jurisprudence in line with the rest of the country. The view now taken by a majority of courts, as discussed herein, represents a more reasoned approach to inventory searches in the context of law enforcement as it exists today. Instead, the majority has merely relied upon *Gant* without any consideration of the likelihood that the evidence in question would have been discovered as part of a valid inventory search. Such an approach represents the worst kind of result-oriented jurisprudence. In effect, the majority was looking for a way to reverse the petitioner's drug convictions and refused to even consider the substantial authority which establishes that the search was constitutionally valid.

Accordingly, I respectfully dissent.