In the

# United States Court of Appeals

## For the Seventh Circuit

No. 16-1039

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

MARTEZ DICKSON,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Northern District of Illinois, Western Division.
No. 3:14-cr-50061 — **Philip G. Reinhard**, *Judge.*

ARGUED NOVEMBER 16, 2016 — DECIDED FEBRUARY 27, 2017

Before EASTERBROOK, KANNE, and HAMILTON, *Circuit
Judges*.

PER CURIAM. Martez Dickson appeals his conviction for
being a felon in possession of a gun. 18 U.S.C. § 922(g)(1). He
argues that the district court erred by denying his motion to
suppress evidence and by imposing vague conditions of su-
pervised release. We find no error in the court's evidentiary
ruling but agree with Dickson that two of his conditions of
supervision are problematic. Consequently, we affirm in

part, vacate in part, and remand for a limited resentencing hearing.

In May 2014, three police officers in Rockford, Illinois, responded to a report that two individuals were asleep in a parked car in a McDonald's drive-thru. One of the officers opened the driver's-side door and tried to wake the slumbering driver, who was later identified as Dickson. Once Dickson finally stirred, another officer observed a handgun lodged in the center console of the front seat. That officer lunged through the passenger's-side door and recovered the gun. Dickson was then arrested on various charges, including unlawful use of a weapon by a felon, 720 ILCS 5/24-1.1(a). An inventory search of the car uncovered small amounts of heroin and marijuana.

The matter was referred to federal authorities, and Dickson was charged with being a felon in possession of a firearm. 18 U.S.C. § 922(g)(1). Dickson then moved to suppress the gun and drugs, arguing that the police had no lawful basis for searching him or the car.

The district court held a hearing on the motion to suppress evidence. The government first introduced a rental-car agreement showing that the car had been rented to a woman named Tyota Keeylen. The rental agreement did not list Dickson as an authorized driver, but the parties stipulated that Keeylen would testify that she told Dickson he could drive the car. The government also introduced records showing that Dickson's driver's license was suspended at the time of his arrest.

At the evidentiary hearing, two of the three officers involved in Dickson's arrest testified. Officer Anthony Curran

testified that around 6:30 a.m. on a Saturday morning they received a call about two individuals asleep in a car in a McDonald's drive-thru. Upon arriving at the restaurant, Curran saw that the car was running, that Dickson and a female passenger were sitting motionless inside, and that there was a bottle of vodka in the front seat's center console. Suspecting that Dickson was drunk, Curran opened the front driver's-side door, removed the keys from the ignition, and placed the keys on top of the car. Curran explained that he did this for safety reasons: he was squeezed in a three-foot space between the car and the building, and he feared he would be crushed if the car started to move.

After Curran took the keys from the ignition, he tried to wake Dickson by yelling at him. Dickson did not respond, so Curran started shaking him. About thirty seconds later, Dickson finally woke up. Curran ordered him to get out of the car, but Dickson responded by trying to shift the car into drive. Nothing happened, of course, because Curran already had removed the keys from the ignition.

Meanwhile, one of the other officers yelled out a police code for a gun and dove through the front passenger's-side door, over the female passenger, pushing Dickson partially out of the car toward Curran. Curran, spotting the handgun lodged between the driver's seat and the center console, pulled Dickson out of the car while the other officers recovered the gun. Curran then cuffed Dickson, searched him, and placed him in a squad car. Further investigation revealed that the gun was loaded and that Dickson did not have a Firearm Owner's Identification Card. The officers arrested Dickson and impounded the car, and an inventory search uncovered heroin and marijuana.

One of the other two officers also testified at the evidentiary hearing, mostly repeating what Curran had said about the events leading to Dickson's arrest. Dickson presented no evidence in rebuttal.

The district court denied Dickson's motion to suppress evidence of the gun and drugs. First, it found the government's witnesses credible. The court next concluded that Dickson lacked standing to challenge the search of the car because Dickson—as an unlicensed, unauthorized driver of a rental car—did not have a reasonable expectation of privacy in the car. The court also concluded that the officers acted reasonably in confronting Dickson, seizing the gun when it came into plain view, and arresting him once they learned that his possession of the gun was unlawful. And once Dickson had been lawfully arrested, the court reasoned, the police also were entitled to impound and conduct an inventory search of the car.

The case then proceeded to trial. The three officers testified about the events that occurred after they found Dickson asleep in the drive-thru. Keeylen, who had not been present during Dickson's arrest, said that she rented the car to travel Saturday but let Dickson borrow it Friday night to get something to eat. The female passenger who had been sleeping in the car testified that Dickson agreed to give her a ride home after a party and that she had not seen the gun until the police recovered it. Dickson again presented no evidence in rebuttal.

The jury found Dickson guilty of being a felon in possession of a firearm, 18 U.S.C. § 922(g)(1). The district court then classified Dickson as an armed career criminal, 18 U.S.C.

§ 924(e)(1); U.S.S.G. § 4B1.4, and sentenced him to 235 months' imprisonment.

Dickson objected to several supervised-release conditions that the district court imposed, but only two of those conditions are relevant to this appeal. The first required that he "remain within the jurisdiction where the defendant is being supervised, unless granted permission to leave by the court or a probation officer." Dickson objected to this condition on the basis that "jurisdiction" is vague. Dickson also objected to a condition requiring him to "notify, as directed by the Probation Officer, third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics and … permit the Probation Officer to make such notifications and to confirm the defendant's compliance with such notification requirement." Both Dickson and the government objected to this condition because it would require him to determine independently when notification was required. The district court overruled the objections.

In May 2016, about five months after Dickson was sentenced, the judge who sentenced him, Judge Reinhard, issued a standing order modifying previously imposed conditions of supervised release for "defendants … sentenced but not yet on supervised release." STANDING ORDER, https://goo.gl/9oY1Ok (visited February 3, 2017). Among the conditions modified by the standing order were the two to which Dickson previously had objected.

On appeal Dickson first argues that the district court erred in denying his motion to suppress evidence of the gun and drugs because the police did not discover that evidence until after Dickson had been unlawfully seized. We review

de novo a district court's denial of a motion to suppress but analyze its underlying factual findings for clear error. *United States v. Whitaker*, 820 F.3d 849, 852 (7th Cir. 2016).

As an initial matter, it is unclear why Dickson challenges the denial of his motion to suppress the drug evidence discovered during the inventory search of the car. As the government notes, no evidence of the drugs was introduced at trial. Dickson says in his reply brief that suppressing the drugs "ensures they won't be the basis of any related prosecution." But since the drugs do not bear on this case, we need not decide whether the drug evidence—as opposed to evidence of the gun—should have been suppressed.

The parties vigorously debate whether Dickson had any reasonable expectation of privacy such that he has standing even to challenge any unlawful search of the car. *See United States v. Sanford*, 806 F.3d 954, 958 (7th Cir. 2015) (questioning whether to revisit *United States v. Haywood*, 324 F.3d 514, 515–16 (7th Cir. 2003), in which we concluded that unlicensed, authorized driver of rental car lacked reasonable expectation of privacy). But that debate is not germane to this appeal—regardless of whether Dickson had any reasonable expectation of privacy in the car he surely can challenge any search that resulted from an unlawful seizure of his person. *See Sanford*, 806 F.3d at 958–59.

The government has not argued that the police officers had probable cause to arrest Dickson for drunk driving when they approached the car, arguing instead that they had reasonable suspicion to detain Dickson under *Terry v. Ohio*, 392 U.S. 1 (1968). *See Matz v. Klotka*, 769 F.3d 517, 522 (7th Cir. 2014). As Curran approached the car, he observed a bottle of vodka and saw that Dickson had passed out behind the

wheel. Dickson all but concedes that it was reasonable in these circumstances for Curran to investigate him for drunk driving (and for having an open bottle of vodka) and to remove the keys from the ignition to ensure officer safety.

Dickson instead focuses on a peculiar Fourth Amendment argument: because any safety concerns were "fully abated" when Curran removed the keys from the ignition, Dickson says, Curran unlawfully seized him by "entering the car to shake Mr. Dickson awake for questioning." But Curran tried to shake Dickson awake only after "yelling" at him failed to do so, and it is hard to see how Curran's actions could be considered unreasonable under the circumstances. *See United States v. Maher*, 454 F.3d 13, 19 n.7 (1st Cir. 2006) ("Just because [a defendant] was so soundly asleep (or unconscious) that [an officer] had to shake his arm to wake him up does not mean he was 'seized' within the meaning of the Fourth Amendment.").

Moreover, even if the evidence from the car were unlawfully obtained, it would be admissible under the inevitable discovery doctrine. *See United States v. Cartwright*, 630 F.3d 610, 613 (7th Cir. 2010). Curran reasonably ordered Dickson out of the car so he could investigate Dickson for possibly driving drunk or having an open container of alcohol. *Smith v. Ball State Univ.*, 295 F.3d 763, 770 (7th Cir. 2002). Had Dickson complied with Curran's order instead of trying to drive away, the gun would have been visible to the officers once Dickson got out of the driver's seat. Similarly, if Curran had time to interrogate Dickson before the other officer spotted the gun, he would have quickly discovered that Dickson did not have a valid driver's license or the rental company's authorization to drive the car. And if Curran had

contacted the rental company, he likely would have been asked to impound the vehicle, at which time the gun and drugs would have been inevitably discovered. *See Sanford*, 806 F.3d at 959.

Turning to Dickson's supervised release, we agree with the parties that the conditions requiring him to remain in the "jurisdiction" and notify third parties of unspecified "risks" are impermissibly vague. *United States v. Ortiz*, 817 F.3d 553, 555 (7th Cir. 2016) (finding vague a condition requiring defendant to remain within jurisdiction of supervision unless granted permission to leave); *United States v. Bickart*, 825 F.3d 832, 841–42 (7th Cir. 2016) (same with third-party notification requirement).

The question remains, however, how we should remedy these problematic conditions. The government asserts that remand is unnecessary because Judge Reinhard's standing order already has clarified any ambiguity in the conditions. Yet Dickson may end up serving his supervised release in another judicial district, so potential confusion can be averted by ensuring that the modified conditions are incorporated into a new judgment. On the other hand, we reject Dickson's suggestion that we should remand for a full resentencing hearing. As we explained in *United States v. Anglin*, No. 15-3625, 2017 WL 359666, at *12 (7th Cir. Jan. 25, 2017), "[w]e do not think it plausible that orally pronouncing the conditions and slightly modifying some of them would induce the district judge to reconfigure other aspects of the sentence, particularly the imprisonment term."

Accordingly, we AFFIRM in part, VACATE in part, and REMAND for the limited purpose of amending the conditions of supervision.