In the

# United States Court of Appeals

## For the Seventh Circuit

No. 11-1205

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

JAKE RICHARDSON, III,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Indiana, South Bend Division.
No. 3:09-cr-00149—**Jon E. DeGuilio**, *Judge.*

ARGUED JUNE 8, 2011—DECIDED SEPTEMBER 2, 2011

Before POSNER, KANNE, and HAMILTON, *Circuit Judges.*

KANNE, *Circuit Judge.* On November 12, 2009, Jake Richardson III was charged with possession with intent to distribute more than five grams of cocaine base in violation of 21 U.S.C. § 841(a)(1). Before trial, Richardson moved to suppress the narcotics and currency that had been found on his person and all post-arrest statements that he had made to law enforcement officials. The district court granted Richardson's

motion in part, but denied it as to some of his statements and as to the physical evidence. A jury ultimately found Richardson guilty. He now appeals his conviction, arguing that the district court should have suppressed the physical evidence and all of his post-arrest statements.

## I. BACKGROUND

LaPorte County Deputy Dallas Smythe stopped Richardson for driving 80 miles per hour in a 55 miles-per-hour zone. Because Richardson and his passenger were behaving oddly, Deputy Smythe had his canine partner, Marko, conduct a free-air search of the vehicle. Marko alerted on both sides of the vehicle, so Deputy Smythe asked Richardson for consent to search the car, which Richardson granted. Before searching the car, Deputy Smythe performed a protective pat-down of Richardson's person. During the pat-down, Deputy Smythe felt a hard object in Richardson's left pants pocket. When he removed the object, he saw that it was a bundle of paper currency. Continuing the pat-down, Deputy Smythe felt a hard object in Richardson's right pants pocket, and Richardson immediately tried to pull away from the officer. When Deputy Smythe removed the object, he saw it was a packet containing an off-white, rocky substance.

After Deputy Smythe had looked at the object, he asked Richardson what it was, and Richardson responded, "You know what it is." Deputy Smythe also asked why Richardson's shirt smelled like marijuana, and Richardson responded that he had been with

people who were smoking marijuana. Deputy Smythe arrested and handcuffed Richardson without further question. While being handcuffed, Richardson said that he could get more cocaine and marijuana and that he "would do anything to make this go away." He said he could get significant amounts of cocaine, and as proof he reported his involvement in an aborted cocaine transaction in Merrillville, Indiana. Deputy Smythe asked Richardson if he wanted to speak with someone. Richardson said he did, so Deputy Smythe called Sergeant Timothy Shortt.

While waiting for Sergeant Shortt, Richardson sat in the back of a squad car, with Deputy Lowell Boswell standing outside. Richardson repeatedly asked Deputy Boswell to open the door and talk to him. When Deputy Boswell entered the car to escape the cold, Richardson told him that he could get a lot of cocaine from a mall in Merrillville where people were coming with a U-Haul truck.

After his arrival, Sergeant Shortt approached Richardson in the squad car and asked Richardson how he was doing. Richardson responded, "Are you the guy we're waiting on?" Sergeant Shortt confirmed that he was. Richardson then told him he could buy a large amount of cocaine from someone in Michigan City, Indiana, or from a cocaine-filled U-Haul truck in Merrillville. Richardson also told Sergeant Shortt he was planning to buy some cocaine next Sunday, and he offered to buy it for the police. After Richardson volunteered this information, Sergeant Shortt asked Richardson where he

had gotten the cocaine base found in his pocket. Richardson told him he had gotten it in South Bend, Indiana. After speaking with Sergeant Shortt, Richardson was taken to LaPorte County Jail for booking. During an inventory search, officers found a small bag of cocaine base in Richardson's sock. From arrest to booking, Richardson received no *Miranda* warnings.

Richardson was charged with possession with intent to distribute more than five grams of cocaine base. Before trial, he moved to suppress the two packets of cocaine base, the bundle of currency, and his post-arrest statements. The district court granted Richardson's motion as to the statements—"You know what it is"; "Are you the guy we're waiting on?"; and "South Bend"—he had made in direct response to Deputy Smythe's and Sergeant Shortt's questions, but denied the motion as to everything else. A jury ultimately found Richardson guilty. He was sentenced to 236 months' imprisonment, based in part on his 24 prior convictions, his career offender status, and the fact that he had interacted with the criminal justice system every year of his life from age 12 to age 43—his age at sentencing.

## II. ANALYSIS

Richardson seeks a new trial, claiming the district court should have suppressed all physical evidence and all of his statements. When reviewing the district court's denial of a motion to suppress evidence, we review factual findings for clear error and legal conclusions *de*

*novo. United States v. Vasquez*, 635 F.3d 889, 894 (7th Cir. 2011).

### A. Physical Evidence

Richardson claims the district court erred by not suppressing all physical evidence—the bundle of currency, the cocaine base in his pocket, and the cocaine base in his sock—seized on the day of his arrest. The district court ruled that the cocaine base in his sock was discovered during a lawful inventory search and that law enforcement officials inevitably would have discovered the currency in the same search. *See United States v. Cartwright*, 630 F.3d 610, 613-14 (7th Cir. 2010). Because the cocaine base in Richardson's pocket gave the officers probable cause for Richardson's arrest, which in turn led to the inventory search, the government and Richardson correctly focus their arguments on whether Deputy Smythe lawfully inspected the cocaine base in Richardson's pocket during the protective pat-down.

Richardson does not dispute that Deputy Smythe lawfully initiated a stop and pat-down of Richardson's person. *See Terry v. Ohio*, 392 U.S. 1 (1968). Rather, he claims Deputy Smythe's pat-down became an impermissible exploratory search when Deputy Smythe removed the cocaine base from Richardson's right pants pocket and inspected it. Richardson's argument misapplies *Minnesota v. Dickerson*, 508 U.S. 366 (1993). Richardson focuses on *Dickerson*'s pronouncement that an officer cannot go beyond a protective pat-down to manipulate an object concealed in a pocket unless "the incriminating

character of the object [is] immediately apparent." 508 U.S. at 379. But that restriction does not apply until the officer concludes that the object at issue is not a weapon. *Dickerson*, 508 U.S. at 378; *see United States v. Muhammad*, 604 F.3d 1022, 1026-27 (8th Cir. 2010) (seizure and inspection of object not unlawful under *Dickerson* because officer was uncertain whether object was a weapon). Deputy Smythe testified that, after the protective pat-down, he "wasn't sure what [the object] was. It was just an unfamiliar lump, [a] hard lump." Based on this testimony, the district court found Deputy Smythe was unsure whether the hard object in Richardson's pocket was a weapon. That finding was not clearly erroneous. *See United States v. Swann*, 149 F.3d 271, 275 (4th Cir. 1998) (deferring to district court's finding that the officer had not determined whether the object was a weapon when testimony was "entirely ambiguous" as to whether the officer "suspected or did not suspect a weapon").

Richardson could have—but did not—argue that Deputy Smythe could not have reasonably suspected the object in Richardson's pocket was a weapon. *See United States v. Brown*, 188 F.3d 860, 866 (7th Cir. 1999). The test for reasonable suspicion is an objective one. *Id*.; *United States v. Robinson*, 615 F.3d 804, 807-08 (7th Cir. 2010). But Richardson disputes only whether Deputy Smythe *actually* believed the object was a weapon—an issue irrelevant to reasonable suspicion, *see Brown*, 188 F.3d at 866—and does not dispute that a reasonable officer in Deputy Smythe's position would have been "warranted in the belief that his safety or that of others was in danger." *Terry*, 392 U.S. at 27.

Even if Richardson had argued that Deputy Smythe could not have had reasonable suspicion, his argument likely would have failed. Courts, including ours, have concluded that an officer who encounters a small, hard object during a pat-down may have reasonable suspicion to believe the object is a weapon. *See, e.g., United States v. Holmes*, 385 F.3d 786, 790-91 (D.C. Cir. 2004) (officer could reasonably suspect small digital scale in jacket pocket was a weapon); *Brown*, 188 F.3d at 865-66 (officer could reasonably suspect hard object smaller than a ping-pong ball in suspect's groin area was a weapon). In close cases, we have taken the same approach that a field officer likely takes during a protective pat-down: "Better safe than sorry." *See Brown*, 188 F.3d at 866.

### B.  Custodial Statements

The district court suppressed all statements Richardson made in direct response to officers' questions. *See Miranda v. Arizona*, 384 U.S. 436 (1966). Richardson argues the custodial interrogation made all of his subsequent statements involuntary and thus inadmissible. Alternatively, he argues that his conversation with Sergeant Shortt was the functional equivalent of an interrogation, thus rendering his statements to Sergeant Shortt inadmissable under *Miranda*.

Deputy Smythe's and Sergeant Shortt's questions may have been *Miranda* violations, but such violations do not render all later statements automatically inad-

missible. *See Oregon v. Elstad*, 470 U.S. 298, 318 (1985); *United States v. Abdulla*, 294 F.3d 830, 835-37 (7th Cir. 2002). The test for admitting a later statement—one not made in response to unwarned custodial interrogation—depends on whether the prior statements made in response to *Miranda*-violating interrogation were nonetheless voluntary. If so, any later voluntary statement is admissible; if not, any later statement is admissible only if there was "a sufficient break in the stream of events to insulate the second confession from the earlier taint." *Watson v. DeTella*, 122 F.3d 450, 454 (7th Cir. 1997) (quotation marks omitted).

The first step in our analysis, then, is to determine whether the three statements Richardson made in response to custodial interrogation—"You know what it is"; "Are you the guy we're waiting on?"; and "South Bend"—were voluntary. A statement is voluntary if, "in light of the totality of the circumstances, [it] is the product of a rational intellect and free will and not the result of physical abuse, psychological intimidation, or deceptive interrogation tactics that have overcome the defendant's free will." *United States v. Dillon*, 150 F.3d 754, 757 (7th Cir. 1998). Moreover, "coercive police activity is a necessary predicate to the finding that a confession is not voluntary." *Id.* (quotation marks omitted).

To show coercive police activity, Richardson claims that he was nervous, handcuffed, and (safely) on the side of the highway for 51 minutes. These circumstances do not show coercive police activity sufficient to overcome Richardson's will. *See United States v. Montgom-*

*ery*, 555 F.3d 623, 632 (7th Cir. 2009) (coercive police activity includes physical punishment, psychological intimidation, and sometimes deceit). Rather, Richardson describes a fairly ordinary law enforcement-suspect interaction. We strongly doubt that this encounter fazed Richardson, given his frequent-flyer status with the criminal justice system—evidenced by his career offender status, 24 prior convictions, and 31 years of regular interaction with law enforcement. *See United States v. Swanson*, 635 F.3d 995, 1003 (7th Cir. 2011) (considering defendant's experience in voluntariness inquiry); *United States v. Ross*, 510 F.3d 702, 710 (7th Cir. 2007) (same).

Richardson's other statements are therefore admissible as long as they were also voluntary. *Abdulla*, 294 F.3d at 836-37. Once handcuffed, Richardson eagerly shared his expertise of past, present, and future Northwest Indiana drug deals with anyone who would listen. These statements were voluntary and thus admissible. *See id.* (subsequent statements voluntary when made "spontaneously and not as the result of interrogation").

In his alternative argument, Richardson claims the entire conversation he had with Sergeant Shortt was functionally equivalent to a custodial interrogation, thus triggering *Miranda*'s warning requirement. An officer can "interrogate" a suspect for *Miranda* purposes without uttering a question. *Rhode Island v. Innis*, 446 U.S. 291, 300-01 (1980). A custodial conversation is an interrogation when the officer knows or should know that his "words or actions . . . are reasonably likely to elicit an incriminating response." *Id.* at 301.

But "the police are not prohibited from 'merely listen-ing' to [a suspect's] voluntary statement." *United States v. Jones*, 600 F.3d 847, 855 (7th Cir. 2010) (quoting *Edwards v. Arizona*, 451 U.S. 477, 485 (1981)). And that is precisely what Sergeant Shortt did—with the exception of an isolated question, the response to which was correctly suppressed. He traveled to the scene of Richard-son's arrest only because Richardson wanted to speak with someone who might help him "make this go away." Sergeant Shortt did not violate *Miranda* by obliging Richardson's desire to talk, and the district court did not err by admitting Richardson's statements to Sergeant Shortt.

### III. CONCLUSION

Richardson has not shown that the district court erred by admitting the physical evidence found on Richardson's person or by admitting evidence of the statements Richardson volunteered to Deputy Smythe, Deputy Boswell, and Sergeant Shortt. Accordingly, we AFFIRM Richardson's conviction.