**IN THE SUPREME COURT OF PENNSYLVANIA**
**EASTERN DISTRICT**

**BAER, C.J., SAYLOR, TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, JJ.**

| | |
|---|---|
| IN THE INTEREST OF:  T.W., A MINOR | :  No. 22 EAP 2020 |
| APPEAL OF :  T.W. | : |
| | :  Appeal from the Judgment of |
| | :  Superior Court entered on February |
| | :  4, 2020 at No. 2390 EDA 2018 |
| | :  affirming the Order entered on July |
| | :  10, 2018 in the Court of Common |
| | :  Pleas of Philadelphia County, |
| | :  Juvenile Division, at No. CP-51-JV- |
| | :  0001105-2018. |
| | : |
| | :  ARGUED:  March 9, 2021 |

## OPINION

**JUSTICE MUNDY**                    **DECIDED:  October 20, 2021**

In this appeal by allowance, Appellant, T.W., a minor, appeals from the February 4, 2020 order of the Superior Court of Pennsylvania, which affirmed the July 10, 2018 order of the Court of Common Pleas of Philadelphia County denying a motion made by Appellant to suppress physical evidence and adjudicating Appellant delinquent for unlawful possession of a controlled substance.  As will be discussed more fully below, Appellant's arrest for unlawful possession of a controlled substance arose from a vehicle stop and a subsequent *Terry*[1] frisk.  Upon frisking Appellant, a police officer of the Philadelphia Police Department felt a hard object in Appellant's left pants pocket.  Fearing that the unknown object could be a weapon, the officer reached into Appellant's pocket and removed the object.  Appellant was arrested for possessing the object and a

---

[1] *Terry v. Ohio*, 392 U.S. 1 (1968).

subsequent search incident to arrest led to the discovery of a controlled substance on Appellant's person. Before trial, Appellant made a motion to suppress the physical evidence recovered from his person, arguing that the police officer exceeded the scope of a permissible *Terry* frisk by reaching into Appellant's pocket and removing an object during the frisk.

We granted review in this matter to address the standards by which a police officer may remove an object from within a suspect's clothing during a *Terry* frisk. We previously addressed this issue in *Commonwealth v. Taylor*, 771 A.2d 1261 (Pa. 2001) (plurality). Our review in that case resulted in a plurality decision whereby the opinion announcing the judgment of the Court held that a police officer conducting a lawful *Terry* frisk may remove an object from within a suspect's clothing if the officer has reasonable suspicion to believe that the object is a weapon. *Id.* at 1269. In light of the fact that *Taylor* did not produce a majority opinion, we reexamine the issue anew.

## I. Factual Background and Procedural History

The salient facts of this case are not in dispute. During the early morning hours of June 19, 2015, Officers Grant and Heeney of the Philadelphia Police Department observed two vehicles making illegal u-turns. The officers pursued both vehicles, which were ignoring multiple traffic signals and traveling through the streets of Philadelphia at a high rate of speed. One of the vehicles eventually crashed, and the two individuals occupying the vehicle fled on foot. The officers, also on foot, pursued the two individuals but lost them during the chase. While pursuing the two fleeing individuals, the officers observed the second car they had been pursuing. The officers, still on foot, initiated a stop of that vehicle.

There were three individuals occupying the second vehicle: a driver, a front passenger, and Appellant, who was sitting in the rear. The officers asked all three individuals for identification, but Appellant was not able to produce identification. At that point, Officer Grant observed Appellant attempt to shield his body from the officers' view and reach into his pockets. Officer Grant directed Appellant not to reach into his pockets and when Appellant did not comply with this direction, Officer Grant removed Appellant from the vehicle and conducted an open handed pat down of Appellant's outer clothing.

During the frisk, Officer Grant felt a hard object in Appellant's left pants pocket. Officer Grant was not able to identify the object by touch, but feared that the object could be a weapon. Based on his experience as a police officer, Officer Grant knew the area in which the vehicle was stopped to be a high-crime area. Additionally, Officer Grant had personal experience with recovering weapons during traffic stops in that area. Officer Grant reached into Appellant's pants pocket and removed the object, which was a glass prescription medication bottle labeled "promethazine." The medication was prescribed to an individual other than Appellant. Officer Grant then placed Appellant under arrest and conducted a search incident to arrest. During the search, Officer Grant discovered a second pill bottle in Appellant's right pants pocket. The bottle contained two pills, which were identified as oxycodone. Thereafter, Appellant was charged with unlawful possession of a controlled substance for possessing the two oxycodone pills.[2]

Appellant's case proceeded to a juvenile adjudication hearing, where Appellant made a motion to suppress the physical evidence recovered from his person by Officer Grant. Before the trial court, Appellant conceded that his removal from the vehicle and

---

[2] Section 13(a)(1) of The Controlled Substance, Drug, Device and Cosmetic Act prohibits the possession of a "controlled substance." Act of April 14, 1972, P.L. 233, *as amended*, 35 P.S. § 780-113(a)(1). Section 4(2)(i) of that Act defines the term "controlled substance" to include the drug oxycodone. 35 P.S. § 780-104(2)(i).

the subsequent frisk by Officer Grant were lawful. However, Appellant argued, in relevant part, that Officer Grant exceeded the scope of a permissible frisk by reaching into Appellant's left pants pocket and removing an object during the frisk.

Officer Grant was the sole witness to testify at the suppression hearing. He testified as to the facts summarized above. At the conclusion of the hearing, the trial court denied Appellant's motion to suppress physical evidence. The court then immediately moved into the trial phase of the proceeding. Based upon the record created during the hearing on Appellant's motion to suppress physical evidence, as well as additional exhibits entered by the Commonwealth during the trial phase, the trial court adjudicated Appellant delinquent for the unlawful possession of a controlled substance.

Following his adjudication of delinquency, Appellant filed a notice of appeal. The trial court ordered Appellant to file a statement of errors complained of on appeal pursuant to Pennsylvania Rule of Appellate Procedure 1925(b), Pa.R.A.P. 1925(b). Therein, Appellant's sole complaint was that the trial court erred in denying his motion to suppress physical evidence. Appellant again argued that Officer Grant exceeded the scope of a permissible frisk by reaching into Appellant's pants pocket and removing an object during the frisk.

In support of its July 10, 2018 order adjudicating Appellant delinquent, the trial court issued an opinion pursuant to Pennsylvania Rule of Appellate Procedure 1925(a). After examining *Terry v. Ohio*, 392 U.S. 1 (1968), the trial court applied a reasonable suspicion standard to determine whether Officer Grant's belief that the object in Appellant's left pants pocket was a weapon was reasonable so as to justify him reaching into and removing the object from Appellant's pocket during the frisk. Examining the record created during the suppression hearing, the trial court concluded, based upon the totality of the circumstances, Officer Grant had a reasonable suspicion that the object in

Appellant's left pants pocket was a weapon. The trial court based this conclusion on the following facts: Appellant was a passenger in a vehicle that was involved in a chase with police in a high crime area; Officer Grant had personal experience recovering weapons from traffic stops in the area in which the vehicle was stopped; Officers Grant and Heeney made the stop and on foot and without the benefit and protection of a police vehicle; Appellant attempted to hide his body from the officers' view during the vehicle stop while reaching into his pockets; and Appellant did not comply with Officer Grant's direction for Appellant to stop reaching into his pockets. Trial Court Opinion at 4-5. As such, the trial court concluded Officer Grant did not exceed the scope of a permissible *Terry* frisk.

The appeal proceeded to the Superior Court, which affirmed. *In re T.W.*, No. 2390 EDA 2018, 2020 WL 551354 (Pa. Super. Feb. 4, 2020). Before the Superior Court, Appellant again conceded that his removal from the vehicle and the subsequent frisk by Officer Grant were lawful. *Id.* at *3. However, Appellant maintained that the trial court erred in denying his motion to suppress physical evidence because Officer Grant exceeded the scope of a permissible frisk by reaching into his left pants pocket and removing an object during the frisk. The Superior Court rejected this argument. Citing *Taylor*, the Superior Court, like the trial court, applied a reasonable suspicion standard to determine whether Officer Grant was justified in reaching into Appellant's left pants pocket during the frisk. *Id.* at *4.

Upon review of the record, the Superior Court agreed with the trial court that based upon a totality of the circumstances, Officer Grant had "a reasonable belief that what he felt in [A]ppellant's pocket was a weapon." *Id.* As such, the Superior Court concluded "Officer Grant did not exceed the scope of a permissible search by reaching into [A]ppellant's left pants pocket during an otherwise valid *Terry* pat-down." *Id.* In doing so, the Superior Court determined that the "plain feel doctrine," as set forth in *Minnesota v.*

*Dickerson*, 508 U.S. 366 (1993) (holding that police officers may seize nonthreatening contraband detected during a lawful frisk if the incriminating nature of the contraband is immediately apparent by touch), did not apply in Appellant's case because Officer Grant removed the object from Appellant's left pants pocket under the reasonable suspicion that the object was a weapon rather than under the belief that the object was contraband. *In the Int. of: T.W*, 2020 WL 551354, at *4.

Appellant then initiated the instant appeal by the filing of a petition for allowance of appeal, which we granted to address the following issue: "Should this Court clarify the issue left unresolved by this Court's split decision in [*Taylor*] relating to the standard for when police may conduct an additional more intrusive search of a pocket following a pat-down for weapons?" *In re T.W.*, 237 A.3d 416 (Table) (Pa. 2020) (per curiam order).

## II.    Discussion

Preliminarily, before turning to the merits of this appeal, we set forth our standard of review, which is as follows:

> An appellate court's standard of reviewing the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Thus, our review of questions of law is *de novo.* Our scope of review is to consider only the evidence for the defense as remains uncontradicted when read in the context of the suppression record as a whole.

*Commonwealth v. Shaffer*, 209 A.3d 957, 968-69 (Pa. 2019) (citations omitted). Where, as here, the issue on appeal relates solely to a suppression ruling, we examine "only the suppression hearing record" and exclude from consideration "evidence elicited at trial." *Commonwealth v. Yandamuri*, 159 A.3d 503, 516 (Pa. 2017). With our standard of review in mind, we turn to the issue at hand.

This appeal concerns the contours of the protection against unreasonable searches and seizures set forth in the United States and Pennsylvania Constitutions. As such, we begin our review by recounting the law surrounding searches and seizures. The Fourth Amendment to the United States Constitution, incorporated to the states by and through the Fourteenth Amendment to the United States Constitution, and Article I, Section 8 of the Pennsylvania Constitution protect citizens from "unreasonable searches and seizures." The Fourth Amendment provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. CONST. amend. IV. Similarly, Article I, Section 8 provides:

> The people shall be secure in their persons, houses, papers and possessions from unreasonable searches and seizures, and no warrant to search any place or to seize any person or things shall issue without describing them as nearly as may be, nor without probable cause, supported by oath or affirmation subscribed to by the affiant.

PA. CONST. art. 1, § 8. Generally, for a search or seizure to be reasonable under the Fourth Amendment and Article I, Section 8, police officers must obtain a warrant before conducting the search or seizure. A search or seizure without a warrant "is presumptively unreasonable . . . subject to a few specifically established, well-delineated exceptions." *Commonwealth v. Chase*, 960 A.2d 108, 113 (Pa. 2008). The present appeal involves the investigatory detention exception, commonly referred to as the *Terry* stop and frisk in reference to the case in which the exception was recognized.

In *Terry*, a Cleveland police officer observed three men whom he believed were canvassing a store in preparation for committing a robbery. The officer approached the

men and, fearing that they may be armed, frisked all three. The officer detected a pistol in the pockets of two of the men's overcoats and removed the pistols from inside those pockets. Before trial, the two men whom were discovered with weapons, sought to suppress the admission of the weapons.

In its review of the case, the United States Supreme Court examined "whether it is always unreasonable for a policeman to seize a person and subject him to a limited search for weapons unless there is probable cause for an arrest." 392 U.S. at 15. In doing so, the Court recognized the competing interests between an individual's Fourth Amendment right to be free from unreasonable searches and seizures and the government's interest in crime detection and prevention as well as the interest of protecting police officers and the public from armed and dangerous criminals. The Court struck a careful balance, holding that it is reasonable under the Fourth Amendment for police officers to briefly stop a suspect "where a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot." *Id.* at 30. The Court further held that it is reasonable under the Fourth Amendment for the brief stop to also include a frisk of the suspect's outer clothing where the police officer has reason to believe the suspect is "armed and dangerous." *Id.* The purpose of the frisk, the Court explained, is to dispel a reasonable fear that the stopped suspect possesses a weapon which could be used to harm a police officer or the public during the stop. *Id.* The term "weapon" was given a broad definition by the Court, which did not define the term to refer solely to guns or knives, but defined the term to include "guns, knives, clubs, or other hidden instruments." *Id.* at 29. With respect to determining whether there is reasonable suspicion that a suspect is armed, the Supreme Court made clear that the applicable standard is an objective one. *Id.* at 21-22. The Court wrote that police officers "need not be absolutely certain that the individual is armed" but rather the

appropriate standard is "whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Id.* at 27.

Applying the foregoing standards to the officer's conduct, the United States Supreme Court concluded the scope of the search by the officer "presents no serious problem" as the officer "did not place his hands in their pockets or under the outer surface of their garments until he had felt weapons, and then he merely reached for and removed the guns." *Id.* at 29-30.

To summarize, for a stop and frisk to be constitutionally sound, the following two conditions must be met:

> First, the investigatory stop must be lawful. That requirement is met in an on-the street encounter . . . where the police officer reasonably suspects that the person apprehended is committing or has committed a criminal offense. Second, to proceed from a stop to a frisk, the police officer must reasonably suspect that the person is armed and dangerous.

*Arizona v. Johnson*, 555 U.S. 323, 326-27 (2009).

This Court recognized the exception set forth in *Terry* in *Commonwealth v. Hicks*, 253 A.2d 276 (Pa. 1969) and, while "[t]he protection against unreasonable searches and seizures afforded by the Pennsylvania Constitution is broader than that under the federal constitution," "Pennsylvania has always followed *Terry* in stop and frisk cases." *Commonwealth v. Jackson*, 698 A.2d 571, 573 (Pa. 1997); *see also Commonwealth v. Brown*, 996 A.2d 473, 476 (Pa. 2010) (recognizing *Terry* "sets forth the reasonableness standard for Article I, [Section] 8 of the Pennsylvania Constitution.").

In the present appeal, Appellant concedes his removal from the vehicle and the subsequent frisk by Officer Grant were lawful. Appellant's Brief at 13; *see also In re T.W.*, 2020 WL 551354, at *3. However, Appellant contends Officer Grant exceeded the scope of a permissible frisk by reaching into Appellant's pants pocket and removing an object

during the frisk. Therefore, we proceed to the issue of what standards govern when a police officer may remove an object from within a suspect's clothing during a *Terry* frisk.

We previously addressed the question presented in this appeal in the case of *Taylor*. Our review in that case resulted in a plurality decision. While plurality decisions are not binding,[3] *Taylor* provides a helpful starting point to begin our analysis. In *Taylor*, police officers of the Duquesne Police Department executed a search warrant on a convenience store as part of a drug trafficking investigation. Two of the officers entered the basement of the building and encountered Taylor, who was receiving a haircut and wearing a black barber's apron. As the officers announced their presence, one of the officers, Officer Adams, observed Taylor moving his hands under the barber's apron. Officer Adams instructed Taylor not to move, but Taylor continued to move his hands under the apron. Fearing Taylor could be armed, Officer Adams removed the apron and frisked Taylor. During the frisk, Officer Adams felt a hard cylindrical object in Taylor's pocket that was approximately four inches long. He concluded "that the object was not a gun or a knife" but feared that the object could be "some type of weapon." *Taylor*, 771 A.2d at 1270. Officer Adams then reached into Taylor's pocket and removed the object, which was a plastic prescription bottle containing crack cocaine. Taylor was placed under arrest and charged with possession of a controlled substance with intent to deliver. Before trial, Taylor sought to suppress the physical evidence removed from his person.

In our review of *Taylor*, we examined, among other things, the standards by which a police officer may reach into a suspect's clothing during a *Terry* frisk. The Honorable Justice Sandra Newman authored the opinion announcing the judgment of the Court. She began her analysis by examining *Terry*. Observing that under *Terry* a police officer may frisk a suspect if the officer has reasonable suspicion to believe that the suspect is armed

---

[3] *Commonwealth v. Thompson*, 985 A.2d 928, 937 (Pa. 2009)

and dangerous and that the purpose of the frisk is to search for weapons, Justice Newman concluded that a police officer may "reach into a suspect's pocket during a frisk" where the officer "feel[s] something that reasonably appears to be a weapon." *Id.* at 1269. Applying that holding to Taylor's case, Justice Newman concluded that, based upon a totality of the circumstances, Officer Adams had a reasonable suspicion that the object in Taylor's pocket was a weapon. Justice Newman explained her reasoning as follows:

> Officer Adams had been involved in the investigation of the drug trafficking at the convenience store. . . . Officer Adams . . . found Taylor in the basement. Immediately after encountering police, Taylor reached for his pocket, despite being told not to move several times. After observing Taylor fumble under the black barber's apron, Officer Adams touched Taylor's pocket. Officer Adams felt a hard, cylinder-type object. Because an officer need only be reasonably, and not absolutely, certain that an individual is armed in order to investigate for weapons, we conclude that Officer Adams was reasonable in suspecting that Taylor could be armed and dangerous. Therefore, Officer Adams justifiably reached into Taylor's pocket in order to protect his safety and the safety of others in the basement.

*Id.* at 1270. As such, Justice Newman concluded Officer Adams did not exceed the scope of a permissible *Terry* frisk by reaching into Taylor's pocket during the frisk. In doing so, Justice Newman determined the plain feel doctrine set forth in *Dickerson* was not applicable to the case because Officer Adams reached into Taylor's pocket under the reasonable suspicion that the object was a weapon rather than contraband. *Id.* at 1269 n.4.

The Honorable Justice Russell Nigro authored a concurring and dissenting opinion in *Taylor*. With respect to whether Officer Adams exceeded the scope of a lawful *Terry* frisk by reaching into Taylor's pocket during the frisk, Justice Nigro did not take issue with Justice Newman's conclusion that a reasonable suspicion standard applies to the retrieval of an object suspected to be a weapon. Instead, Justice Nigro wrote that once Officer Adams "patted Taylor's pocket and felt a cylinder object of approximately four inches in

length . . ., which he determined was neither a gun nor a knife, Officer Adams was not constitutionally justified in further searching Taylor's pocket and seizing the pill bottle." *Id.* at 1275 n.5.

Prior to *Taylor*, the Superior Court had similarly held that "a more intrusive search of a suspect's person following a protective pat-down search would only be justified under a *Terry* analysis where the officer reasonably believed he had felt what appeared to be a weapon." *In Int. of S.D.*, 633 A.2d 172, 173 (Pa. Super. 1993); *see also In Int. of Dixon*, 514 A.2d 165 (Pa. Super. 1986).

Likewise, federal courts have also determined that during a lawful *Terry* frisk a police officer may retrieve an object from within a suspect's clothing if the officer has reasonable suspicion that the object is a weapon. *See, e.g., United States v. Houston*, 920 F.3d 1168, 1173 (8th Cir. 2019); *United States v. Richardson*, 657 F.3d 521, 524 (7th Cir. 2011); *United States v. Swann*, 149 F.3d 271, 276 (4th Cir. 1998). In *Swann*, for example, a police officer, while investigating the theft of a wallet, stopped and frisked Swann. During the frisk, the officer felt a "hard and unusual" object in one of Swann's socks. *Swann*, 149 F.3d at 272. Not knowing what the object was, the officer removed the object, which turned out to be a stack of credit cards that had been stolen. Before trial, Swann sought to suppress the evidence on the grounds that the officer exceeded the scope of a permissible *Terry* frisk. In its review of the case, the United States Court of Appeals for the Fourth Circuit, citing the language in *Terry* that a police officer may frisk a suspect if the officer has reason to believe the suspect is armed and dangerous, concluded that the standard by which an officer may reach into a suspect's pocket to remove a suspected weapon is an objective one. Specifically, the court articulated the appropriate standard as: "would a reasonable officer in those circumstances have believed that the item would likely be a weapon." *Id.* at 275. Based on the facts of the

case, the court determined the police officer had reasonable suspicion to believe the object in Swann's sock was a weapon and, therefore, the officer did not exceed the scope of a permissible *Terry* frisk by removing the object from Swann's sock.

In the present appeal, Appellant acknowledges the holding in Justice Newman's opinion in *Taylor* sets forth that a police officer may reach into a suspect's pocket and remove an object during a lawful *Terry* frisk if the officer has a reasonable suspicion that the object is a weapon. Appellant contends, however, that Justice Newman's holding was incorrect. According to Appellant, pursuant to the plain feel doctrine, as set forth in *Dickerson*, a police officer that detects an object in a suspect's pocket during a *Terry* frisk "may only reach in to seize the contents of [the suspect's] pockets if the pat down leads to probable cause to believe that the person is in possession of weapons or contraband." Appellant's Brief at 12. As such, Appellant asks this Court to clarify *Taylor* and make clear that pursuant to the plain feel doctrine, "[p]robable cause is required for any seizure extending beyond the pat down authorized by *Terry*." *Id.* at 20.

Appellant's argument requires us to examine *Dickerson*. In *Dickerson*, the United States Supreme Court examined "whether police officers may seize nonthreatening contraband detected during a protective pat down search of the sort permitted by *Terry*." 508 U.S. at 373. Upon review, the Supreme Court equated the "tactile discoveries of contraband" during a *Terry* frisk with contraband left open for plain view, explaining that in seizing illegal contraband detected during a lawful *Terry* frisk "there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons." *Id.* at 375. The Court ultimately held that police officers may seize contraband detected during a lawful frisk if the identity of the illegal contraband is "immediately apparent" upon touching the object. *Id.* However, if after conducting the *Terry* frisk, the police officer knows the detected object is not a weapon, the plain feel

doctrine does not permit an officer to squeeze, slide, or otherwise manipulate the object in an attempt to identify the object for purposes of establishing probable cause. *Id.* at 378.

This Court formally adopted the plain feel doctrine as consistent with Article I, Section 8 of the Pennsylvania Constitution in *Commonwealth v. Zhahir*, 751 A.2d 1153, 1163 (Pa. 2000). However, this Court acknowledged the plain feel doctrine before *Zhahir*, and has long interpreted *Dickerson* as having limited applicability. It is well-established under our precedent that the plain feel doctrine is an extremely narrow doctrine and is "only applicable where the officer conducting the frisk feels an object whose mass or contour makes its criminal character immediately apparent." *Commonwealth v. Stevenson*, 744 A.2d 1261, 1265 (Pa. 2000). Justice Newman recognized the limited applicability of the plain feel doctrine in *Taylor*, writing that plain feel doctrine did not apply in that case because Officer Adams retrieved the object from Taylor's pocket under the reasonable suspicion that the object was a weapon rather than nonthreatening contraband. *Taylor*, 771 A.2d at 1269 n.4. The Superior Court in the present matter likewise recognized the limited applicability of the plain feel doctrine explaining the doctrine did not apply in the present case on similar grounds as Justice Newman set forth in *Taylor*. *In re T.W.*, 2020 WL 551354, at *4.

Federal courts have also recognized the limited applicability of the plain feel doctrine. *See, e.g.*, *United States v. Harris*, 313 F.3d 1228, 1238 (10th Cir. 2002); *Richardson*, 657 F.3d at 524; *Swann*, 149 F.3d at 275. In *Richardson*, for example, a police officer frisked Richardson and "felt a hard object in" his right pants pocket. 657 F.3d at 522. Unsure of what the object was, the officer removed it. The object turned out to be a packet of cocaine. Richardson was charged with possession of cocaine with the intent to distribute. Before trial, Richardson sought to suppress the packet of cocaine.

Citing *Dickerson*, Richardson argued that the frisk became "an impermissible exploratory search when [the police officer] removed the cocaine [] from Richardson's right pants pocket and inspected it." *Id.* at 523-524. The United States Court of Appeals for the Seventh Circuit rejected this argument, writing that Richardson's argument misapplied *Dickerson*. The court concluded that the rule set forth in *Dickerson* that a police officer may not go beyond a frisk unless immediately apparent illegal contraband is detected "does not apply until the officer concludes that the object at issue is not a weapon." *Id.* at 524. Since the officer was unsure whether the object was a weapon, the court concluded the applicable standard to measure whether the officer exceeded the scope of a permissible frisk was whether the officer had a reasonable suspicion that the object in Richardson's pocket was a weapon. *Id.*

Upon review of *Terry* and *Dickerson*, as well as decisions of courts of this Commonwealth and federal courts interpreting and applying those cases, it is clear that *Terry* and *Dickerson* set forth two distinct justifications and accompanying standards by which a police officer may remove an object from a suspect's clothing during a lawful *Terry* frisk.

The purpose of a *Terry* frisk is to dispel any fear that the stopped suspect is armed and dangerous. 392 U.S. at 30. Considering that a police officer may frisk a suspect based upon a reasonable suspicion that the suspect is armed and dangerous, which does not require the officer to "be absolutely certain that the individual is armed" in order to conduct the frisk, *id.* at 27, it would be illogical then for police officers to be limited to removing suspicious objects detected during the frisk based upon, as Appellant suggests, the heightened standard of probable cause that the object is a weapon. While it was apparent to the officer in *Terry* that what he felt in the overcoats of the two men was a pistol, it may not always be so obviously apparent to an officer conducting a *Terry* frisk

that a detected object is a weapon. To interpret *Terry* as requiring the heightened standard of probable cause to remove an object believed to be a weapon would undercut the very purpose of a *Terry* frisk and would require police officers to allow suspicious objects to remain on a suspect's person during a stop, which could potentially be used to harm police officers or the general public. A *Terry* frisk then would do little to dispel a fear that the suspect is armed and dangerous. As we have previously observed "[o]ur constitutional safeguards" against unreasonable searches and seizures "do not require an officer to gamble with his life." *Commonwealth v. Morris*, 644 A.2d 721, 724 (Pa. 1994).

In so concluding, we reject Appellant's argument that the plain feel doctrine sets forth a probable cause standard applicable to the removal of all objects during a *Terry* frisk. The plain feel doctrine allows police officers to remove immediately apparent illegal contraband from within a suspect's clothing during a lawful frisk. *Dickerson*, 508 U.S. at 375. It is well-established in state and federal jurisprudence that *Dickerson* has limited applicability. The United States Supreme Court was clear in its holding in *Dickerson* that the plain feel doctrine applied only to the removal of illegal nonthreatening contraband detected during a lawful frisk. *Id.* If the Court had intended for *Dickerson* to set forth a standard applicable to the removal of all objects during a lawful frisk, it likely would have indicated as much instead of writing specifically in the limited context of illegal nonthreatening contraband.

Furthermore, to interpret *Dickerson* as setting forth a single standard applicable to the removal of all objects would seemingly put the plain feel doctrine in direct conflict with the purpose of a *Terry* frisk. Again, the purpose of a *Terry* frisk is to dispel any fear that the stopped suspect is armed and dangerous and could harm police officers or the general public during a stop. 392 U.S. at 30. *Dickerson* on the other hand provides that

police officers may seize immediately apparent illegal contraband detected during a lawful frisk. 508 U.S. at 375. It may not be immediately apparent that the possession of a weapon, such as a firearm for example, is illegal contraband. A *Terry* frisk then would serve little purpose if police officers could only remove objects which they reasonably suspect to be a weapon if it was immediately apparent that possession of the weapon was illegal.

This leads us to hold as follows. If a police officer conducting a lawful *Terry* frisk detects an object within a suspect's clothing, assuming no other exception to the general warrant requirement applies, the officer may remove the object under one of two justifications. Pursuant to *Terry*, and consistent with Justice Newman's opinion in *Taylor*, a police officer may remove an object from within a suspect's clothing under the reasonable suspicion that the object is a weapon. If, however, during the frisk the police officer is able to determine that the object is not a weapon, pursuant to *Dickerson*, the officer may only remove the object if, by touch, it is immediately apparent that the object is illegal contraband.

Having determined the two standards by which a police officer may remove an object from within a suspect's clothing during a lawful *Terry* frisk, we turn to the facts of this case to determine whether Officer Grant exceeded the scope of a permissible *Terry* frisk by reaching into and removing an object from Appellant's left pants pocket during the frisk. We reiterate that our scope and standard of review when reviewing the denial of a motion to suppress limits us to determining whether the trial court's "factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct." *Shaffer*, 209 A.3d at 968-69. In doing so, we "do not simply comb through the record to find evidence favorable to a particular ruling. Rather, [we] look to the specific findings of fact made by the [trial] court." *In re L.J.*, 79 A.3d 1073, 1085 (Pa. 2013).

Here, the trial court found:

> [Appellant] was a passenger in a vehicle that was [] in a high speed chase with police at 4:15 in the morning in a high crime area where Officer Grant has a plethora of personal experience with weapons recovered from traffic stops. Moreover, the officers made the stop without the benefit of a police vehicle. [Appellant] did not comply with Officer Grant's order to stop hiding his body and reaching into his pockets. It was only after a limited search of the outside of [Appellant's] clothes and feeling a hard object that was not readily identifiable that Officer Grant expanded his search to the inside of that particular pocket.

Trial Court Opinion at 4-5. Applying a reasonable suspicion standard to the question of whether Officer Grant exceeded the scope of a permissible *Terry* frisk, the trial court concluded, based upon the foregoing facts, "Officer Grant had a reasonable suspicion . . . that [Appellant] may be armed and dangerous" and, therefore, Officer Grant was justified in removing the object from Appellant's left pants pocket. *Id.* at 5.

Before this Court, Appellant argues the plain feel doctrine applies to the present matter such that Officer Grant was required to have probable cause, rather than reasonable suspicion as the trial court concluded, to reach into and remove an object from Appellant's left pants pocket during the frisk. Again, under the plain feel doctrine, if a police officer determines an object detected during a lawful frisk is not a weapon, the officer may remove the object from within a suspect's clothing only if it is immediately apparent by touch that the object is illegal contraband. *Dickerson*, 508 U.S. at 375. Here, there is no indication in the record that during the frisk of Appellant, Officer Grant concluded the object in Appellant's left pants pocket was not a weapon. Officer Grant candidly testified during the hearing on Appellant's motion to suppress physical evidence that at the time of the frisk he did not know what the object in Appellant's left pants pocket was but he feared the object could be a weapon. Seeing that Officer Grant did not determine during the frisk that the unknown object was not a weapon, the present case

is unlike *Commonwealth v. Graham*, 721 A.2d 1075, 1079-80 (Pa. 1998) (plurality) and *Commonwealth v. E.M.*, 735 A.2d 654, 660-62 (Pa. 1999), wherein we held that it was unreasonable for the police officers in those cases to remove objects as part of a *Terry* frisk as the police officers determined during those frisks that the objects were not weapons and where the plain feel doctrine did not justify the removal of those objects. Therefore, we agree with the Superior Court that the plain feel doctrine does not apply in this case and, as the trial court and Superior Court did, we apply a reasonable suspicion standard to determine whether Officer Grant exceeded the scope of a permissible *Terry* frisk by reaching into and removing an object from within Appellant's left pants pocket during that frisk.

Appellant does not contest that the trial court's factual findings are supported by the record. However, Appellant does question whether the trial court's findings are sufficient to establish a reasonable suspicion that the object in Appellant's left pants pocket was a weapon. It is well-established that "[r]easonable suspicion is a less stringent standard than [the] probable cause necessary to effectuate a warrantless arrest, and depends on the information possessed by police and its degree of reliability in the totality of the circumstances." *Brown*, 996 A.2d at 477. In examining whether the totality of the circumstances provide an officer with reasonable suspicion, we "must [] afford due weight to the specific, reasonable inferences drawn from the facts in light of the officer's experience[,] and acknowledge that innocent facts, when considered collectively, may" give the officer reasonable suspicion. *Id.* Thus, we must examine the trial court's findings to determine whether they are sufficient, under an objective standard, to establish a reasonable suspicion that the object in Appellant's left pants pocket was a weapon.

Accepting the uncontested findings of the trial court, we agree that based upon a totality of the circumstances Officer Grant had a reasonable suspicion that the object in

Appellant's left pants pocket was a weapon. This conclusion is not based entirely on the fact that Appellant possessed a hard object on his person. There are other factors to consider in determining whether Officer Grant possessed reasonable suspicion that the object in Appellant's pocket was a weapon. After all, a combination of factors, none of which alone would support a finding of reasonable suspicion, may be sufficient to support a finding of reasonable suspicion. *Commonwealth v. Cook*, 735 A.2d 673, 677 (Pa. 1999).

The fact that Appellant was a passenger in a vehicle that was involved in a high speed chase with police at night[4] and in a high crime area[5] coupled with the fact that when vehicle was stopped Appellant attempted to shield his body from the view of Officers Grant and Heeney[6] and reach into his pockets despite being told not to,[7] would allow a reasonable prudent person to suspect that the object in Appellant's left pants pocket was

---

[4] Erratic or evasive driving is a factor that may be considered in determining whether there is reasonable suspicion that a suspect is armed and dangerous. *In re O.J.*, 958, A.2d 561, 565-66 (Pa. Super. 2008), *see also United States v. Rice*, 483 F.3d 1079, 1084-85 (10th Cir. 2007). Additionally, a vehicular stop, which occurs at night, "creates a heightened danger that an officer will not be able to view a suspect reaching for a weapon." *In re O.J.*, 958 A.2d at 566.

[5] We acknowledge a suspect's mere presence in a high crime area is not sufficient by itself to support reasonable suspicion. *See In re D.M.*, 781 A.2d 1161, 1163-64 (Pa. 2001) (citing *Illinois v. Wardlow,* 528 U.S. 119, 124 (2000)). However, presence in a high crime area may be considered in examining the totality of the circumstances. *Id.*

[6] A suspect's attempt to shield parts of his or her body or clothing from a police officer during a stop, an act sometimes referred to as "blading," "is an indication the suspect might be armed" and may be considered in determining whether there is reasonable suspicion that the suspect is armed and dangerous. *Commonwealth v. Bozeman*, 205 A.3d 1264, 1276 (Pa. 2019); *see also United States v. Coleman*, 383 F. App'x 180, 181-82 (3d Cir. 2010).

[7] A suspect's attempt to keep his or her hands inside a pocket or within clothing after being asked to remove them by a police officer during a stop may be considered in determining whether there is reasonable suspicion that a suspect is armed and dangerous. *Commonwealth v. Scarborough*, 89 A.3d 679, 684 (Pa. Super. 2014); *see also United States v. Cornelius*, 391 F.3d 965, 967-68 (8th Cir. 2004).

a weapon.[8]  Again, Officer Grant was not required to be absolutely certain that the object in Appellant's pocket was a weapon, rather, under the applicable standard, he need only have reasonably suspected the object to be a weapon in order to conduct a search of the pocket.  As such, we conclude Officer Grant did not exceed the scope of a permissible *Terry* frisk by reaching into and removing a suspected weapon from Appellant's left pants pocket during the frisk.[9]

---

[8] Justice Wecht writes in his Concurring and Dissenting Opinion that Officer Grant did not have a reasonable suspicion that the object in Appellant's left pants pocket was a weapon, in part, because the object "was more consistent with the many and sundry innocuous objects that people carry in their pockets."  Concurring and Dissenting Opinion at 29 (Wecht, J.).  However, the reasonable suspicion standard does not require a police officer to be absolutely certain that an object detected within a suspect's clothing is a weapon.  Rather, as indicated above, courts look to the totality of the circumstances to determine whether reasonable suspicion exists.  *In Int. of A.A.*, 195 A.3d 896, 904 (Pa. 2018).

[9] Justice Wecht, in his Concurring and Dissenting Opinion, concludes Officer Grant did exceed the scope of a permissible *Terry* frisk.  Concurring and Dissenting Opinion at 30 (Wecht, J.).  Justice Wecht arrives at this conclusion after examining, *sua sponte*, the question of "whether a police officer conducting a protective search must utilize the least intrusive means reasonably available to the officer" to detect the presence of weapons.  *Id.* at 9.  Despite the fact that this question was not raised by Appellant at any stage of this case, the responsive opinions suggest that we can consider the question because it is encompassed within the issue on which we granted review.  *Id.* at 31 n.24 (Wecht, J.); Concurring and Dissenting Opinion at 2 n.1 (Donohue, J); Concurring Opinion at 5 n.3 (Dougherty, J.).  To address the foregoing question, as the responsive opinions suggest, would require us to disregard our established rules on issue preservation.

Generally, for an issue to be reviewable by this Court, it must have been "preserved at all stages in the lower courts."  *Commonwealth v. Hays*, 218 A.3d 1260, 1265 (Pa. 2019). In examining whether an issue has been preserved for our review, we first look to the record to determine whether the issue was raised before the trial court, including in the statement of errors complained of on appeal if the trial court ordered such a statement be filed.  *See* Pennsylvania Rule of Appellate Procedure 302(a), Pa.R.A.P. 302(a) ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal."); Pa.R.A.P. 1925(b)(4)(vii) ("Issues not included in the [s]tatement [of errors complained of on appeal] . . . are waived); *see also Commonwealth v. Romberger*, 378 A.2d 283, 286 (Pa. 1977) (setting forth that the doctrine of waiver applies "even where the issue is of

## III. Conclusion

We granted review in this matter to examine the standards by which police officers may remove objects detected during a *Terry* stop and frisk from within a suspect's clothing. Upon review, for the reasons set forth above, we conclude that *Terry* and *Dickerson* set forth separate and distinct justifications and accompanying standards for

---

constitutional dimensions."). Upon review of the record, it is clear Appellant did not raise the question examined by the responsive opinions in his argument before the trial court or in his statement of errors complained of on appeal filed after the trial court's adjudication. In his statement of errors complained of on appeal, Appellant identified only a single issue for appellate review, which is: whether "[t]he [trial] court erred in denying [Appellant's] motion to suppress physical evidence, as the [Appellant] was searched and arrested without probable cause." Appellant's Statement of Errors Complained of on Appeal at 2. This issue cannot reasonably be read to include the question examined by the responsive opinions.

While we need not examine the record to determine if the foregoing question was preserved before the Superior Court because it is clear that the question was not raised before the trial court, we do so for completeness. In his brief to the Superior Court, Appellant identifies the "statement of the question involved" as follows: "Did not the [trial] court err in denying the motion to suppress physical evidence, insofar as appellant was arrested and searched without probable cause?" Appellant's Brief to the Superior Court at 3. This question cannot reasonably be read to include the question examined by the responsive opinions. Therefore, even if the question had been raised before the trial court, it still would not be preserved for our review because it was not raised before the Superior Court. *See* Pennsylvania Rule of Appellate Procedure 2116(a), Pa.R.A.P. 2116(a) ("No question will be considered unless it is fairly stated in the statement of questions involved or is fairly suggested thereby.").

The law is clear that "where the parties in a case fail to preserve an issue for appeal, an appellate court may not address the issue *sua sponte*." *Johnson v. Lansdale Borough*, 146 A.3d 696, 709 (Pa. 2016). Appellate courts must be mindful not to address issues which are not preserved for review as it "disturbs the process of orderly judicial decision-making by depriving the court of the benefit of counsel's advocacy . . . and depriving the litigants the opportunity to brief and argue the issues." *Id.* Accordingly, in light of the fact that the question examined by the responsive opinions was not raised by Appellant at any stage in this case, we cannot, *sua sponte*, raise and address the question as it was not preserved for our review.

removing objects from within a suspect's clothing during a lawful *Terry* frisk. As Justice Newman held in *Taylor*, we hold a police officer may remove an object from within a suspect's clothing during a *Terry* frisk if the officer has reasonable suspicion that the object is a weapon. If during the search, however, the officer determined the object is not a weapon, the officer may only remove the object if it is immediately apparent by touch the object is illegal contraband. In the present case, for the foregoing reasons, we conclude Officer Grant had a reasonable suspicion that the object in Appellant's left pants pocket was a weapon. Therefore, Officer Grant did not exceed the scope of a permissible *Terry* frisk by reaching into and removing an object from Appellant's pocket. Accordingly, we affirm the February 4, 2020 order of the Superior Court.

Chief Justice Baer and Justices Saylor and Dougherty join the opinion.

Justice Dougherty files a concurring opinion in which Justice Todd joins.

Justice Donohue files a concurring and dissenting opinion.

Justice Wecht files a concurring and dissenting opinion.